PEOPLE ex rel. METROPOLITAN LIFE INS. CO. v. HOTCHKISS, Superintendent of Insurance.

(Supreme Court, Appellate Division, Third Department. December 30, 1909.)

INSURANCE (§ 36*)—POWERS OF INSURANCE COMPANY—ACQUISITION OF REAL ESTATE.

Under Insurance Law (Consol. Laws, c. 28) § 20, subd. 2, which permits an insurance company to acquire and own such real estate as shall be requisite for its convenient accommodation in the transaction of its business, a life insurance company employing a large number of persons had power to purchase real estate to be used as a hospital for the care and treatment of its employés afflicted with tuberculosis.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. §§ 41–45; Dec. Dig. § 36.*]

Chester, J., dissenting.

Certiorari by the People, on the relation of the Metropolitan Life Insurance Company, to review the determination of William H. Hotchkiss, as Superintendent of Insurance, that it was contrary to Insurance Law, § 20, to permit relator to purchase real estate to be used as a hospital for the care of its employés suffering with tuberculosis. Determination annulled, and matter remitted to the Superintendent.

Argued before SMITH, P. J., and CHESTER, KELLOGG, COCHRANE, and SEWELL, JJ.

Carter, Ledyard & Milburn (Richard B. Lindabury, of counsel), for relator.

Edward R. O'Malley, Atty. Gen. (Edward H. Letchworth, Deputy Atty. Gen., of counsel), for respondent.

JOHN M. KELLOGG, J. The humane and praiseworthy purpose for which the company seeks to purchase and occupy the real estate does not call upon or permit us to do violence to the language of the statute. Our only duty is to gather from its four corners the fair spirit and meaning of the language employed. Section 20 of the insurance law (Consol. Laws, c. 28) leaves but little for construction. Unlike section 11 of the general corporation law (Consol. Laws, c. 23), it is not permissive in its nature, but prohibits a purchase of real estate for any purpose except those named. Unless the relator can find its warrant within the fair terms of this section, it cannot acquire this real estate.

Subdivision 1 permits the company to purchase and own the building in which it has its principal office and the land upon which it

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

stands.  Subdivision 2 permits it to acquire and own such real estate as "shall be requisite for its convenient accommodation in the transaction of its business," and subdivision 3 "such as shall have been acquired for the accommodation of its business," and subdivision 7 "such as shall have been acquired under sections 13 and 14 of the general corporation law," which section 14 relates to such real estate without the state as "shall be requisite for such corporation in the convenient transaction of its business."  Section 20 of the insurance law provides that no real property shall be acquired by an insurance company under subdivisions 1 and 2 thereof, nor under section 14 of the general corporation law, except with the approval of the Superintendent of Insurance.

It is unnecessary to determine whether the word "accommodation," in subdivision 2 of the section under consideration, is to be treated as surplusage, or whether the words "the convenient accommodation" mean otherwise than convenient for it, or whether the language employed indicates that the real estate must furnish accommodations— that is, a place for the housing of the company in the transaction of its business, a place upon or from which the transaction of business of the company is to be conducted.  It is evident that subdivisions 2, 3, and 7 are intended to relate to real estate other than that upon which the principal office stands.  The general and principal business of the corporation evidently is transacted in and from the principal office.  Therefore subdivisions 2 and 3 contemplate that real estate may be purchased and occupied by the company in carrying on a part of its business.  The real estate now sought to be purchased is to be built upon and actually occupied and used by the company itself for the purpose of caring for and treating those of its employés who are afflicted with tuberculosis.  The question, then, is whether it is authorized to treat and care for such of its employés.  If so authorized, it becomes a part of its business so to do, and it may acquire convenient quarters therefor.

The application having been denied solely for want of power, we refer to the petition for the facts which indicate that this real estate is requisite for the company's convenient accommodation in the transaction of its business.  It is a stock corporation, with assets of upwards of $236,000,000 and gross income for the year 1908 of upwards of $76,000,000.  At the time of the application 20 of its employés were absent from work on account of tuberculosis, and were receiving assistance from the company, and upon investigation 48 cases of tuberculosis were found among the employés.  We quote from the petition:

"Tuberculosis is far the most insidious as well as the most destructive disease which obtains among the company's employés and policy holders.  In the company's home office it employs about 2,800 people, and it has a field force of over 11,000 persons.  Cases of tuberculosis are found with great frequency among the company's employés, particularly in the home office, and frequently its existence is not discovered by the management until a number of other employés have been exposed to the contagion.  What to do with the cases when discovered is a troublesome problem.  If the company should at once discharge the sufferers, great hardships to themselves and their families would frequently occur, and dissatisfaction among the remaining employés would be likely to result.  Further than this, such a course would induce the infected

persons to conceal their true condition as long as possible, and so give occasion for the spread of the disease among the other employés. For this reason it has seemed to the officers and directors of the company that, if provision were made for the removal and treatment of the victims of the disease during its earlier stages, they could be cured, and the danger of its spread among the other employés would be greatly lessened. It is thought that the chance for wise and effective treatment at the expense of the company would induce the victims among the company's employés to make known their condition as soon as it is discovered by themselves, and that this would result in greatly lessening the spread of the disease, and increase the efficiency and moral tone of the force. I believe that the cost to the company of constructing and maintaining the sanatorium would be fully repaid in the increased efficiency of its employés, due to the removal, in great measure, of the menace of contagion from tuberculosis, and to the feeling that if, through exposure in the company's employ or elsewhere, they should contract the disease, they will be given the best possible treatment and opportunity to overcome it. This cost would really be a part of the compensation paid by the company to its employés as a whole, and in my judgment would be of greater value to the company than the annual addition to the wages of the employés of the cost of maintaining the sanatorium."

The duties of the employer to the employé have been enlarged in recent years, and are not merely that of the purchaser of the employé's time and service for money. The enlightened spirit of the age, based upon the experience of the past, has thrown upon the employer other duties, which involve a proper regard for the comfort, health, safety and well-being of the employé. A corporation may not only pay to its employé the actual wage agreed upon, but may extend to him the same humane and rational treatment which individuals practice under like circumstances. It must do this in order to get competent and effective service. We see corporations pensioning old and infirm employés, establishing benefits for the sick and disabled, permitting regular vacations with continuing pay, aiding in sickness, and doing many humane and praiseworthy acts which formerly might have been questioned as not fairly within the powers or duties of the corporation. These acts are not to be defended upon the ground of gratuity or charity, but they enter into the relation of the employer and employé, become as it were a part of the inducement for the employé to enter the employment and serve faithfully for the wage agreed upon, and become a part of the terms of employment. The considerate employer, who treats his employés well, is thus able to secure better service, and upon more satisfactory terms, than the unwilling, illiberal employer. A corporation with 13,280 employés is called upon to exercise great care in selecting and managing them, so as to receive the best service. Upon their loyalty and efficiency much of its success must depend. The employment, training, disciplining, and managing of such a force, and obtaining from it the best results, is an important part of the relator's business. It is well within the corporate power to assume, as it has done, the care and treatment of such of its employés as are afflicted with tuberculosis; and, unless it is shown to be wasteful of the company's money and unproductive of beneficial results, the practice may stand as well within the scope of its business. The reasonable care of its employés, according to the enlightened sentiment of the age and community, is a duty resting upon it, and the proper discharge of that duty is merely transacting the business of the corpora-

tion. If it preserves the health, the efficiency, and safety of the other employés to segregate such as have tuberculosis, or are suspected of being so afflicted, the relator has the power so to do. It would seem unnecessary to discharge a trusted employé because he is so afflicted, when the company by proper treatment may again obtain the value of his services. By taking him from its offices at once, it not only benefits the employé and makes his speedy recovery and return to work more probable, but protects its other employés. If we assume that the company has the legal right to care for and assume the treatment of its employés so afflicted, it must follow that it has the right to do this in the most economical and most effective manner. It would seem that to put the patient in a hospital where intelligent treatment and manner of living is prescribed by the experience of those familiar with the disease would tend to shorten the time of his sickness, lessen the expense thereof to the company, and insure his more speedy return to duty. I think the company has the right to care for and treat its employés so afflicted, and may do this in the manner which promises the best result to the patient and consequently to the company itself. The power of the company to rent premises for such treatment and care is, I think, beyond question; and, if so, it is for the reason that the premises are so used for the convenient accommodation of the company in the transaction of its business. The same reasoning permits the purchase of real estate upon which the company may maintain a hospital for that purpose.

The original petition foreshadowed that vacancies in the hospital from time to time, at the election of the company, may be filled from selected cases among its policy holders; but that position has not been urged upon us, and the briefs of counsel upon either side have practically eliminated that question. We therefore treat the case as relating solely to the tuberculosis hospital, and upon the facts stated we conclude that the relator has power under section 20 of the insurance law to acquire and hold real estate for that purpose.

The determination under review is therefore annulled, and the matter remitted to the Superintendent of Insurance for his consideration upon the merits. All concur, except CHESTER, J., who dissents.