In the Matter of Irving Adler et al., Appellants, against Lewis A. Wilson, as Commissioner of Education of the State of New York, et al., Respondents.

Third Department, July 2, 1953.

*Harold I. Cammer* for appellants.

*Charles A. Brind, Jr.,* and *John P. Jehu* for Lewis A. Wilson, as Commissioner of Education, respondent.

*Denis M. Hurley, Corporation Counsel (Daniel T. Scannell, Michael A. Castaldi, Seymour B. Quel* and *Helen R. Cassidy* of counsel), for Board of Education of the City of New York and another, respondents.

Imrie, J.   Petitioners, teachers in New York City schools, have been suspended for refusal to answer questions as to membership in the Communist party.   They appealed individually

under section 310 of the Education Law to the Commissioner of Education (herein referred to as the Commissioner), who dismissed the appeals. They then instituted this proceeding in Albany County Supreme Court for an order under article 78 of the Civil Practice Act to review the Commissioner's decisions. This appeal is from the order of that court which dismissed the petition.

On December 6, 1951, respondent Board of Education (herein referred to as the Board) adopted " Findings of Fact and Declaration of Policy Concerning Communist Party," to which we will refer as the declaration of policy. This read, in part:

" The conclusion is now inescapable that the Communist Party in the United States is and has been dedicated to the advocacy of the overthrow of our government by force and violence. Based upon such conclusion, it is the announced policy of the Board of Education that a teacher or other employee who is a member of the Communist Party or of a group advocating the overthrow of the government by force and violence is not qualified to continue in the school system. Past membership in the Communist Party, or in a group advocating the overthrow of the Government by force and violence may establish present membership in the absence of a showing that such membership has been terminated in good faith. Even if it does not so establish present membership, past membership may be taken into account with other circumstances of the individual case in considering whether a teacher or other employee is disqualified.

" Entirely relevant to a teacher's fitness for continued employment is the question of whether or not that teacher is now or has ever engaged in an illegal act or conspiracy. Where substantial reason exists to believe that a teacher is or has engaged in such activity, it is the duty of the Superintendent and, at his directive, any person in the employ of the Board of Education, to inquire as to such participation and the extent thereof. Similarly, it is the duty of the teacher who may be the subject of such inquiry to make full and fair disclosure of the facts. Any failure or refusal on the part of the teacher to reveal the facts must be regarded as an act of insubordination and conduct unbecoming a teacher, subjecting such teacher to disciplinary proceedings as provided by Law."

After taking official notice of various Federal and State statutes (including the Feinberg Law, later commented upon), judicial and administrative decisions and other matters, the declaration concluded, " The findings of this Board, herein con-

tained, are made without prejudice to the rights of any teacher who may be accused of subversive activity, and are not intended to impair any safeguards available to such teacher by reason of any rule, statute or law. Such accused teacher may, during all stages of any proceeding in which he may be involved, controvert the evidence offered of his membership in the Communist Party or any other subversive group with knowledge of the illegal aims and purposes of such party or group.''

Thereafter each of the petitioners was directed to report to a representative of the superintendent of schools for preliminary inquiry to determine whether certain employees of the board were or had been engaged in subversive activities. One of these petitioners denied present membership, but refused to answer as to previous membership. Five others declined to answer. Disciplinary action followed on the ground of insubordination in refusing to answer the questions. That was the only action reviewed by the commissioner. There has been no determination that petitioners are members of the Communist party nor have charges been brought against petitioners upon that ground.

The basic question before us is as to the right of the board or the superintendent of schools to question teachers as to their Communist party membership, past or present, and their obligation to answer. None of the petitioners admits membership in the Communist party, nor is the latter a party to this proceeding and appeal. The question here posed was answered in *Garner* v. *Los Angeles Bd.* (341 U. S. 716). It is stated in appellants' brief that '' They do not here contend, nor did they below, that under appropriate safeguards, inquiries into affiliations, including membership in the Communist party, as a condition of public employment was upheld as a valid exercise of state power in *Garner* v. *Board of Public Works, supra.*'' But they do now contend that the Feinberg Law vests such conceded State power '' in the Board of Regents and not independently in the 4,000 separate boards of education in the state '', who, they say, must operate under the rules which that law requires the regents to promulgate.

From this point they develop the thesis (1) that the Feinberg Law sets up the exclusive procedure for removing from the schools members of subversive organizations, (2) that, if that law is not exclusive in application, the board's declaration of policy is invalid because it is inconsistent and incompatible therewith, and (3) that the Feinberg Law is particularly applicable because of the prohibitions of sections 25 and 26-a of the

Civil Service Law. While much of such argument is without the scope of the issues upon which the commissioner's decisions were made, it seems timely to give it consideration here.

The *Garner* case remains conclusive as to the board's right of inquiry concerning a teacher's membership in the Communist party, as well as his obligation to answer. There the court had under consideration an ordinance of the city of Los Angeles, enacted under the authority of the California Legislature, which required of every city employee an affidavit and an oath as to his affiliation, as of the time of making the affidavit or previously, with the Communist party or the Communist Political Association and, *inter alia*, as to his advising, advocating or teaching the overthrow of the United States or the California State Governments by force, violence or other unlawful means at the time of taking the oath or within a period of five years prior to the effective date of the ordinance. The affidavit and oath requirements were held valid. The court said (p. 720), "We think that a municipal employer is not disabled because it is an agency of the State from inquiring of its employees as to matters that may prove relevant to their fitness and suitability for the public service. Past conduct may well relate to present fitness; past loyalty may have a reasonable relationship to present and future trust." In a concurring opinion Mr. Justice FRANKFURTER said (p. 725). "A municipality like Los Angeles ought to be allowed adequate scope in seeking to elicit information about its employees and from them. It would give to the Due Process Clause an unwarranted power of intrusion into local affairs to hold that a city may not require its employees to disclose whether they have been members of the Communist Party or the Communist Political Association. In the context of our time, such membership is sufficiently relevant to effective and dependable government, and to the confidence of the electorate in its government. I think the precise Madison would have been surprised even to hear it suggested that the requirement of this affidavit was an ' Attainder ' under Art. I, § 10, of the Constitution. * * * I cannot so regard it."

Conceding the applicability of the *Garner* case, appellants turn to *Wieman* v. *Updegraff* (344 U. S. 183) as limiting the *Garner* case and distinguishing the court's holding in the case relating to the Feinberg Law (*Adler* v. *Board of Education*, 342 U. S. 485, affg. *Thompson* v. *Wallin*, 301 N. Y. 476). *Wieman* involved the validity of an Oklahoma statute requiring all State employees to make oath denying advocacy or membership in

any party or organization advocating overthrow of the governments of the nation or State by force or violence or other unlawful means, or any affiliation with, among others, organizations determined by the United States Attorney General to be a Communist front or subversive organization. In that case the court said (pp. 189–191), " We assumed in *Garner,* that if our interpretation of the oath as containing an implicit *scienter* requirement was correct, Los Angeles would give the petitioners who had refused to sign the oath an opportunity to take it as interpreted and resume their employment. But here, with our decision in *Garner* before it, the Oklahoma Supreme Court refused to extend to appellants an opportunity to take the oath. In addition, a petition for rehearing which urged that failure to permit appellants to take the oath as interpreted deprived them of due process was denied. This must be viewed as a holding that knowledge is not a factor under the Oklahoma statute. We are thus brought to the question touched on in *Garner, Adler,* and *Gerende* [*Gerende* v. *Election Board,* 341 U. S. 56] : whether the Due Process Clause permits a state, in attempting to bar disloyal individuals from its employ, to exclude persons solely on the basis of organizational membership, regardless of their knowledge concerning the organizations to which they had belonged. For, under the statute before us, the fact of membership alone disqualifies. If the rule be expressed as a presumption of disloyalty, it is a conclusive one.

" But membership may be innocent. A state servant may have joined a proscribed organization unaware of its activities and purposes. In recent years, many completely loyal persons have severed organizational ties after learning for the first time of the character of groups to which they had belonged. * * * We hold that the distinction observed between the case at bar and *Garner, Adler* and *Gerende* is decisive. Indiscriminate classification of innocent with knowing activity must fall as an assertion of arbitrary power." *Wieman* did not modify or limit *Garner* or *Adler.* It pointed a difference in the subject matters under consideration and distinguished the application of the rules of the cases in terms which even they who run may read.

Chapter 360 of the Laws of 1949, known and already referred to as the Feinberg Law, added section 3022 to the Education Law. Its validity was sustained in *Adler* v. *Board of Education* (*supra*). In terms it directs the regents to adopt rules for the better enforcement of section 3021 of the Education Law and of section 12-a of the Civil Service Law; to make a list of organi-

zations they find to be subversive, after inquiry and proper notice and hearing; to make rules that " membership in any such organization included in such listing made by it [the Board of Regents] shall constitute prima facie evidence of disqualification for appointment to or retention in any office or position in the public schools of the state "; and to report annually to the Legislature " a full statement of measures taken by it [such Board of Regents] for the enforcement of such provisions of law and to require compliance therewith."

Section 3021 of the Education Law requires the removal of a teacher, among others, in the public schools for the utterance of any treasonable or seditious word or words or the doing of any treasonable or seditious act or acts while holding such position.

Section 12-a of the Civil Service Law disqualifies for public employment a person advocating or who is a member of an organization which advocates the overthrow of our government by force and violence.

Subdivision 5 of section 2573 of the Education Law, which was numbered section 2523 at the time of the enactment of the Feinberg Law, provides the means by which investigation or inquiry as to the fitness of teachers to continue in employment may be conducted.

It may be noted, as did the court in the *Garner* case in referring to California legislation of 1941, pre-existing the ordinance under consideration (p. 720), that the above statutory provisions antedated the Feinberg Law by periods of ten or more years. The Feinberg Law subtracted nothing from the substantive or procedural provisions of existing law. It did fix a rule of evidence as to a rebuttable presumption of disqualification for employment in the public schools by reason of membership in a certain type of organization. But that has to do with the power of dismissal, with which we are not presently concerned. Its function was that of implementation, as was said in *Thompson* v. *Wallin* (*supra,* p. 489) and in *Adler* v. *Board of Education* (*supra,* p. 487). In the *Thompson* case, at page 489, Judge LEWIS said, " Concerned, as we are, with the qualification for public employment in the vital field of education, we regard the law here challenged as an effort by the Legislature to insert a new strand in the mesh by which a screening process is accomplished in the selection of those who teach the State's children." The preamble of the Feinberg Law indicates the concern of the Legislature growing out of

the infiltration of subversive groups, particularly of the Communist party, into employment in the public schools and by reason of the failure to prevent such infiltration despite the existence of statutes designed to avoid it. Its definitive terms direct attention particularly to the provisions of the Education and Civil Service Laws, already referred to. It is indeed an ingenuous thought, sired by the wish, to read into a law which lacks any word of limitation or modification of existing laws a legislative intent to limit local school authorities in the exercise of a right and performance of a duty to examine and inquire into the very matters of which the Legislature was complaining. The Feinberg Law is not exclusive in its application to an inquiry of the nature here considered.

Passing to appellants' criticism of the declaration of policy, it is apparent that its importance has been overemphasized. It states a policy but it purports to add nothing to powers of inquiry and investigation already resident in local school authorities. It explicitly reserves " any safeguards available to such teacher [accused of subversive activity] by reason of any rule, statute or law. Such accused teacher may, during all stages of any proceeding in which he may be involved, controvert the evidence offered of his membership in the Communist Party or any other subversive group with knowledge of the illegal aims and purposes of such party or group." In clear language it states that safeguard of the *scienter* requirement which the United States Supreme Court found implicit in the Los Angeles ordinance and lacking in the Oklahoma statute (cf. excerpt from opinion in *Wieman* v. *Updegraff, supra*). We do not find in the declaration the infirmities of which appellants complain.

Section 25 of the Civil Service Law forbids questioning relating to the political opinions or affiliations of any person having to do with the Civil Service and requires that no appointment or selection to or removal from office or employment therein shall in any manner be affected or influenced by such opinions or affiliations. Section 26-a provides that no one shall directly or indirectly ask the political affiliations of any employee in the civil service as a test of fitness for holding office. Thus it is sought to separate one's service for the State from his political obligations and to combat the political thesis that " ' to the victors belong the spoils ' ". (*People ex rel. Goldschmidt* v. *Travis,* 167 App. Div. 475.)

The views of the Legislatures enacting such laws did not envisage a condition in which a group mechanism dedicated

to the doctrine of the overthrow of our form of government, by force and violence if necessary, and, incidentally, the destruction of all parties except itself, would assume the habiliments of a political party. In his concurring opinion in *American Communications Assn.* v. *Douds* (339 U. S. 382, 422) Mr. Justice JACKSON said, " If the statute before us required labor union officers to forswear membership in the Republican Party, the Democratic Party or the Socialist Party, I suppose all agree that it would be unconstitutional. But why, if it is valid as to the Communist Party? The answer, for me, is in the decisive differences between the Communist Party and every other party of any importance in the long experience of the United States with party government." In *Matter of Rabouine* v. *McNamara* (301 N. Y. 785, affg. 275 App. Div. 1052) it was determined that section 26-a did not prohibit questioning concerning Communist party membership.

We conclude that the decisions of the commissioner were not contrary to law and were neither arbitrary nor capricious. The order appealed from should be affirmed, with $50 costs to the respondents in equal shares.

The motion to vacate the stay should be granted.

FOSTER, P. J., BERGAN, COON and HALPERN, JJ., concur.

Order appealed from affirmed, with $50 costs to the respondents in equal shares and printing disbursements to each. Motion to vacate stay granted.