In the Matter of GUARDIAN LIFE INSURANCE COMPANY OF AMERICA, Appellant, against ALFRED J. BOHLINGER, as Superintendent of Insurance of the State of New York, Respondent.

First Department, May 18, 1954.

*James B. Donovan* of counsel (*Daniel J. Reidy* and *Clarke S. Ryan* with him on the brief; *MacNeil Mitchell,* attorney), for appellant.

*Samuel A. Hirshowitz* of counsel (*Wendell P. Brown* with him on the brief; *Nathaniel L. Goldstein, Attorney-General,* attorney), for respondent.

*Robert M. Benjamin* of counsel (*Parker, Duryee, Benjamin, Zunino & Malone,* attorneys), for Life Insurance Association of America, *amicus curiæ.*

BOTEIN, J. This is an appeal by Guardian Life Insurance Company from an order of Special Term denying its application, under article 78 of the Civil Practice Act, to annul a determination of the Superintendent of Insurance, who in turn denied an application by Guardian for approval of a purchase of real estate.

Guardian asserts that it proposes to use part of the real property for its own use — a purpose requiring the approval of the superintendent. Subdivision 7 of section 81 of the Insurance Law deals with real estate investments; paragraph (a) thereof authorizes the acquisition of real estate for a principal office; and paragraph (b) authorizes the acquisition of real estate " [s]uch as shall be requisite for its convenient accommodation in the transaction of its business ". Subdivision 7 further provides that no real property may be acquired for the purposes recited in paragraph (a) or paragraph (b) with-

out the approval of the superintendent. The provisions of paragraph (b) are directly applicable in this proceeding.

Guardian, prior to its application to the superintendent, had acquired certain vacant land in North White Plains, Westchester County. It purchased this property originally for investment purposes only, and not for company use, intending to improve it with an office building calculated to produce a reasonable return on its investment. Section 81 (subd. 7, par. [h]) does not require the superintendent's approval for an investment in real estate for the production of income, up to a total amount not exceeding 3% of the carrier's assets.

When Guardian applied to the City of White Plains to rezone the property, it struck the snag which required it to seek the superintendent's approval, pursuant to section 81 (subd. 7, par. [b]) for its own contemplated occupancy of the proposed building. The representatives of White Plains, who had been attracted by Guardian's earlier consideration of a large site for its principal office, balked at rezoning a smaller area " for use as an, investment by Guardian so Guardian can make money ". It appears that to win over the White Plains authorities Guardian finally informed them that it would itself occupy the proposed two-story office building in whole or in part. This eleventh-hour commitment compelled Guardian to seek the superintendent's approval under section 81 (subd. 7, par [b]). The superintendent did not " look with favor " on the application, but volunteered to grant Guardian a hearing. The superintendent contends that this hearing was granted as a matter of grace and not as a matter of statutory right. There is no provision for a hearing in connection with an application under paragraph (b) of subdivision 7, although the Insurance Law provides a right to a hearing in a number of other situations.

At the hearing Guardian presented a somewhat indefinite program. It was uncertain as to what departments and what personnel would be removed to the new building, and as to how long it would occupy space in that building. Guardian owns a twenty-story building in New York County, in which it occupies thirteen floors and rents the remaining seven floors. The seven rented floors contain sufficient space for Guardian's expansion purposes. Since 1946 it has spent over $400,000 in modernizing this building. In addition, the superintendent some years ago approved the acquisition of an adjoining building to provide room for expansion, which building is not being used for that purpose. No adequate study was made of the facilities avail-

able to Guardian. The contemplated move to White Plains was concededly planned as a temporary expedient, with Guardian taking some of the space for an undetermined period. Conflicting views were expressed as to the desirability of piecemeal moving of isolated departments of the insurance company. The deputy superintendent who conducted the hearings reported in part as follows: " The Department would have no objection to the relocation by Petitioner of all its home office activities to a new building to be erected on a site of Petitioner's choosing elsewhere in New York State, provided a suitable plan was in contemplation for the orderly sale of its present building, and that such relocation and sale appeared to be in the interest of its policyholders. Admittedly, Petitioner's thinking in this regard is still in the stage of indecision."

Guardian contended its present quarters were unsuited to its present and developing needs. It argued, in evident good faith, for the desirability of gradually vacating the New York County building that housed its principal office; but was unable to furnish the ultimate destination of the future principal office. After a thorough exploration of the facts the superintendent held that the proposed White Plains building was not " requisite " for the convenient accommodation of Guardian's business.

We believe that the determination of the superintendent is not subject to more than a threshold judicial review to determine whether the superintendent misconceived or exceeded his authority, because such review is precluded by the statute. The right of the Legislature to proscribe judicial review of certain actions of administrative officers and boards is now well established (*Switchmen's Union* v. *Board,* 320 U. S. 297; *Labor Board* v. *Cheney Lumber Co.,* 327 U. S. 385; *Federal C. C.* v. *RCA Communications,* 346 U. S. 86, 90; *Matter of Schwab* v. *McElligott,* 282 N. Y. 182).

The pattern of the Insurance Law indicates a careful and consistent legislative design to grant judicial review in certain specific situations and to preclude such review in all others. Section 34 reads in part: " Whenever by the provisions of this chapter any order or other act of the superintendent is declared to be subject to judicial review at the suit of any person, such person may maintain a proceeding under article seventy-eight of the civil practice act."

While section 34 does not in so many words bar judicial review where the right is not explicitly granted, such proscription clearly emerges when read in the setting of the entire

Insurance Law. Of course, any other construction would stamp section 34 as a meaningless and unnecessary reaffirmation of the rights of an aggrieved party to pursue his remedies pursuant to article 78 of the Civil Practice Act; and the implication naturally follows that when the right is not specifically granted, article 78 may not be invoked.

In 1938, when general revision of the entire Insurance Law was under consideration by the Legislature, several insurance company organizations drove for the enactment of a provision for judicial review of all orders or acts of the superintendent. This effort was vigorously opposed by the superintendent, who argued that such " reviewing procedure would include many acts for which judicial review is not appropriate " (see Memoranda of Association of Life Insurance Companies, Association of Casualty and Surety Executives, and Committee on Law Revision of the Insurance Department). Section 34 must be read in the light of this legislative history.

The Legislature has etched a recognizable design in granting judicial review. In general, it appears that provisions for licensing, or for the suspension or revocation of licenses, such as those affecting insurers (§ 40, subd. 7), salesmen of insurance securities (§ 51), insurance agents (§§ 117, 139-c), insurance brokers (§ 119) and adjusters (§ 123), all carry concomitant authorizations for judicial review. In similar vein, so do provisions for the merger, consolidation or conversion of insurers (§§ 486, 487). But provisions designed to protect policyholders' assets against improvident or illegal depletion, such as the one under consideration here, do not generally offer judicial review.

Similarly, section 121 of the Alcoholic Beverage Control Law authorizes judicial review of certain specified acts of the Liquor Authority, but is silent as to review of other actions. The courts have consistently held that section 121 constitutes a legislative mandate against judicial consideration of those actions of the Liquor Authority for which review is not authorized (*Matter of Millman* v. *O'Connell*, 300 N. Y. 539; *Matter of Calvary Presbyterian Church* v. *State Liq. Auth.*, 249 App. Div. 288, affd. 275 N. Y. 552; *Reckler* v. *Quinn*, 255 App. Div. 873, affd. 280 N. Y. 768; *Matter of Roden* v. *New York State Liq. Auth.*, 258 App. Div. 1076). It should be noted, however, that the argument for exclusion of judicial review where not specified is strengthened by a statement contained in section 2 — the policy and purpose section — to the effect that the Liquor Authority's power to determine public convenience and advantage is " subject only to the right of judicial review hereinafter provided for ".

The norms that govern the acquisition of real estate by an insurer for its own use — namely, '' Such as shall be requisite for its convenient accommodation in the transaction of its business ''— were originally contained in the first general incorporation act for insurers in New York, over a century ago (L. 1849, ch. 308, § 9). Approval by any public official of such transactions was not required then — not until re-enactment of section 20 of the former Insurance Law in 1906, following disclosure of the evils uncovered by the Armstrong Committee (Report of Joint Committee of Senate and Assembly on Life Insurance Companies [1906]). After reporting '' flagrant abuses '', juggling of book values and use of dummy titleholders to cover up purchases of property not requisite for business use, the committee concluded with the following recommendation, which gave birth to the requirement of approval now contained in paragraph (b) of subdivision 7: '' No further purchase of property should be permitted under subdivisions 1 and 2 of section 20 of the Insurance Law or under section 14 of the General Corporation Law without the consent of the Superintendent of Insurance upon his finding that the acquisition is necessary.'' (P. 384.)

In the light of its legislative background it would appear that the power of approval granted to the superintendent does not limit him, as suggested by Guardian, to a mere supervisory function of checking its technical compliance with the standard established by section 81 (subd. 7, par. [b]).

Of course, if the superintendent misconceived or exceeded his statutory grant of authority, a reviewing court could curb or correct such abuses or errors (*Matter of Barry* v. *O'Connell,* 303 N. Y. 46). *People ex rel. Metropolitan Life Ins. Co.* v. *Hotchkiss* (136 App. Div. 150) strongly urged as precedent by Guardian for its right to judicial review, held nothing more than that the superintendent had misconceived the extent of his power. In that case, decided in 1909, there was before the court the construction of the forerunner of paragraph (b) of subdivision 7. Metropolitan sought to buy real property to construct a hospital for the care of tuberculosis sufferers among its employees. The company sought the superintendent's approval on the basis that it was a contemplated purchase of realty '' requisite for the company's convenient accommodation in the transaction of its business ''. The superintendent denied the application '' solely for want of power '' (p. 152), believing that the purpose to which the hospital was to be put was outside the

scope of Metropolitan's business. The determination was annulled and remitted for " consideration upon the merits ". Furthermore, in 1909 the predecessor of section 34 had not yet been enacted, nor was the Insurance Law studded with as many provisions for judicial review as are now contained in the law.

Guardian also contends that the superintendent exceeded his authority in failing to adhere to the statutory standard of " convenient accommodation " in considering its application. A reading of the report of the hearing deputy, however, indicates that he polarized his consideration of the problem, as well as his findings, to the legislative criteria. His ultimate findings indicate an awareness of the basic statutory standard. For example, he found:

" 4. The Petitioner has not demonstrated that its present quarters are inadequate for the convenient transaction of its business or that economies in the best interests of policyholders will flow from such acquisition.

" 5. The proposed building project is purely an interim measure to serve until the Petitioner finds what it may consider a more adequate and proper location for the erection of a new Home Office building.

" 6. The cost of the project will be upwards of $1,300,000.

" 7. As of the date of the hearing on the petition, the plans for actual use by various departments of the Petitioner had not yet been crystallized.

" 8. Petitioner is still endeavoring to find a proper location for a new Home Office building.

" 9. The property was acquired in violation of the Insurance Law Section 81-7(b), cf. Insurance Law, Section 89."

It is clear, from the evidence and the hearing deputy's report and findings, that there is no basis in fact for Guardian's complaint that the superintendent is attempting to " supplant management or * * * to formulate those business decisions which properly are the sole responsibility of management."

Therefore, and to repeat, in view of the statutory preclusion of judicial review of the superintendent's action, and since he acted appropriately within the scope of his legislative grant of power, this court does not possess the power to review such action.

However, even if the court does have the power to review, the facts and circumstances do not warrant annulling the superintendent's ruling. The hearing granted to Guardian was not required by statute, but there is no point to laboring the question

whether Guardian's application called for administrative action rather than quasi-judicial determination by the superintendent. Appraised by rules too often enunciated to require repeating, the decision of the superintendent was neither arbitrary nor capricious, it had a reasonable basis and was amply supported by the evidence adduced upon the hearing. Such evidence has been outlined above.

Accordingly, the order of Special Term should be affirmed.

CALLAHAN, J. (concurring). I am not prepared to say that the courts may not review any determination of the Superintendent of Insurance unless the Insurance Law explicitly so provides.

I think it is enough in deciding this appeal to hold that the Special Term was correct in its decision that there was not sufficient ground to disturb the determination of the superintendent.

DORE, J. P. (dissenting). The salient issues on this appeal are: (1) whether the determination of the Superintendent of Insurance is subject to review by the court; and, assuming it is, (2) whether the superintendent's action is contrary to law, arbitrary and unsupported by substantial evidence. In the interest of reasonable brevity, we will not in this dissenting opinion, unnecessarily repeat facts set forth in the majority opinion.

At the very outset it should be emphasized that in this case there is no proof, and no claim even, that this insurance company, its officers or directors, are guilty of "the flagrant abuses" reported by the Armstrong Committee in 1905. The officers of Guardian are not charged with any fraud or any other acts of malfeasance in the acquisition and holding of the real estate in question. Nor are they charged with declaring false values or the use of dummy titleholders to cover purchase of property not requisite for the company's business use. Such were the acts the Armstrong Committee found and denounced. On the contrary, here the good faith, the complete honesty and integrity of the insurance company, its officers, directors and employees are not questioned and on the facts disclosed could not in reason be questioned. In fact the frequent reference the Attorney-General makes to the findings of the Armstrong Committee, shows what unusual contentions the position he has taken forces him to make.

The criticisms leveled by the superintendent and his aides at the action of the directors and officers of this company are based on facts that indicate the directors' conscientious care, foresight and good judgment. Certainly, as the record shows, it is perfectly sensible to move, a little at a time, so that the directors can be best informed and utilize the real estate at first *in part* for their own business and the protection of vital records.

The Attorney-General has taken what seems to us the untenable position that our Insurance Law *proscribes review by the courts* where it does not specifically grant review. (Italics mine throughout.) The very opposite is true; the power of review is an essential part of the tripartite division of power that is the peculiar genius of our system of government; viz., such division of power that nowhere the possibility even of the growth of arbitrary power will be tolerated or continued. The Insurance Law (§ 34) does not expressly bar judicial review; and in a state of facts such as we have before us, we find no " implication " that when the right to review is not expressly granted, it is statutorily barred. That on the revision of the Insurance Law, an effort to provide expressly for judicial review of " all " acts of the superintendent, did not result in such comprehensive statutory compulsion, does not mean that the act of the superintendent before us is not reviewable. We must ever keep in mind the nature and scope of the action here sought to be reviewed. To sustain the right here to review, it is not necessary to contend that *all ministerial* acts of the superintendent are reviewable. Many trivial ministerial acts depending on solely discretionary matters may not be subject to review. But the action here in question relates not to a trivial ministerial matter, but goes to the heart of the existence and continuity of the business of private insurers in this State; viz., the acquisition of real estate requisite for the transaction of their business.

While under the statutory mandate of section 81 (subd. 7) the " approval of the Superintendent " is necessary for such acquisition, that approval in the very nature of the importance and scope of the matters to be approved is *ex necessitate* a quasi-judicial function. That precisely is how the superintendent treated it in granting a trial before his determination, although he claims the trial was a favor on his part and not necessary. But he did give a plenary hearing at which testimony was adduced on both sides, direct and cross-examination had, exhibits offered and received in evidence. In the face of of the enormous amount of real estate necessarily involved in

a State that probably has the greatest accumulation of insurance business in the Union, the purchase of real estate for the convenient transaction of the business of private insurers is a matter of major importance. It is unbelievable that the Legislature ever intended to grant to the unreviewable judgment of one man a power of such extent and magnitude.

Section 81 generally relates to " reserve investments ". Subdivision 7 thereof relates to *real estate* and, so far as here relevant, permits acquisition thereof only if acquired or used for the following purposes: (subd. 7, par. [b]) " Such as shall be requisite for its [the company's] convenient accommodation in the transaction of its business." Under subdivision 7 of section 81 " No real property shall be acquired by any domestic insurer pursuant to paragraphs  *  *  * (b) * * * of this subsection seven except with the approval of the superintendent." Accordingly, the sole narrow issue before the superintendent was whether the property in question was requisite for the convenient accommodation of the company in the transaction of its business.

When the Legislature orders administrative supervision pursuant to a statute containing an express standard, the administrator must exercise his discretion in conformity with that statutory standard. Therefore, when the superintendent refused the approval in question on the ground that it was not wise or " in the best interests of the policy holders ", he was applying a test or criterion that by the mandate of the Legislature was not the basis of the test. The superintendent did not follow the standard; he substituted his *sole* individual and subjective judgment in place of the combined judgment, business experience and legal responsibility of petitioner's officers and directors.

The insurance business is, of course, affected by public interest and therefore requires regulation. But reasonable regulation in the public interest is one thing. Management and complete right to control business policy placed in the hands of a single administrator is quite another; and, if permitted, would tend to take the private property in question and make the insurance business *pro tanto* a matter of State ownership and dominion.

Thus in annulling a decision of the Public Service Commission, our Court of Appeals in *People ex rel. Delaware & Hudson Co.* v. *Stevens* (197 N. Y. 1, 10) said: " We do not think the legislation alluded to was designed to make the commissioners the financial managers of the corporation, or that it empowered

them to substitute their judgment for that of the board of directors or stockholders of the corporation as to the wisdom of a transaction, but that it was designed to make the commissioners the guardians of the public by enabling them to prevent the issue of stock and bonds for other than the statutory purposes; these purposes we have already enumerated in quoting the statute ".

In our opinion we should hold that the superintendent's duties are supervisory only, to enforce the statutes, to review the acts of management and see that they conform to the statutes; but not to supplant management or attempt to formulate business decisions which properly are the sole responsibility of management.

This is the ruling the Appellate Division of the Third Department made concerning the Superintendent of Insurance (*People ex rel. Metropolitan Life Ins. Co. v. Hotchkiss,* 136 App. Div. 150) in a similar case. In that case, the same question was presented regarding a statute with the *identical words* of the statute before us. The sole question there was whether or not a tuberculosis hospital for the insurance company's employees was, as a real estate investment " requisite for the company's convenient accommodation in the transaction of its business." In a comprehensive opinion by KELLOGG, J., the court expressly held that the insurance company " under the statute " had the power to acquire and hold the real estate in question as a tuberculosis hospital for its employees " for the reason that the premises are so used for the convenient accommodation of the company in the transaction of its business "; and, accordingly, " annulled " the determination of the Superintendent of Insurance.

Concededly the real estate in question with the other real estate held by Guardian for the same purpose, does not exceed the 10% limitation in section 87 of the Insurance Law; in fact even with the property in question included, the real estate so held by Guardian is less than 1% of its assets. Guardian intends to use the real estate in part for the requisite transaction of its own business. The superintendent adduced no factual evidence to disprove the evidence Guardian had presented in that regard. He merely presented the opinions of three " experts " that the purchase was, in their judgment, unwise. The superintendent should refuse approval only when the company's action is clearly unauthorized, when the property is unrelated to the company's business or there are no reasonable

business reasons supporting the conclusion that it is requisite, or there is fraud, other malfeasance or unjust enrichment on the directors' part.

Since it is integral to the superintendent's position, that even if he deviated from the law, the courts would have no review, his position is untenable. Even if the Legislature itself attempted to give him the power he now claims, namely the sole, absolute administrative power in his own unreviewable wisdom to control all purchases of all the real estate of all the insurance companies of the State of New York for the convenient transaction of their business — the act would be void as an unconstitutional delegation of power. No administrative officer should have unlimited *judgment* power without definite standards (*Schechter Corp.* v. *United States,* 295 U. S. 495, 530; *Packer Collegiate Inst.* v. *University of State of N. Y.,* 298 N. Y. 184).

In the absence of explicit statutory proscription of review, the courts should always review at least when an action of this importance is in question. The accepted rule was expressed by Judge Lewis, now Chief Judge of the Court of Appeals, in a unanimous opinion reversing this court (*Matter of Schwab* v. *McElligott,* 257 App. Div. 808, revd. 282 N. Y. 182, 186) when the court said: " The field is limited within which the discretion of an administrative officer or board may be exercised unhampered by judicial review. (*People ex rel. Schau* v. *McWilliams,* 185 N. Y. 92, 100.) We think that limit is surpassed by the present record. In the absence of a clear expression by the Legislature to the contrary, the courts may review the exercise of a discretionary power vested in an administrative officer or body to determine whether the case discloses circumstances which ' leave no possible scope for the reasonable exercise of discretion in such manner.' (*Matter of Durr* v. *Paragon Trading Corp.,* 270 N. Y. 464, 469; *People ex rel. Lodes* v. *Department of Health,* 189 N. Y. 187, 194; *Matter of Larkin Co.* v. *Schwab,* 242 N. Y. 330, 334, 335; *Matter of Leone* v. *Brewer,* 259 N. Y. 386, 390; *Matter of Picone* v. *Comr. of Licenses,* 241 N. Y. 157, 160–162; *Matter of Small* v. *Moss,* 277 N. Y. 501, 513; *People ex rel. Sweeney* v. *Rice,* 279 N. Y. 70, 73.) "

Even where the Legislature provides in the clearest possible language exclusion of judicial review as in section 890 of the Education Law, the Court of Appeals *has reviewed* just such action. In the *Matter of Chapin* v. *Board of Educ.* (291 N. Y. 241, 244–245) the Court of Appeals ruled: " Section 890 of the Education Law makes ' final and conclusive, and not subject to

question or review in any place or court whatever ', a decision of the Commissioner of Education on an ' appeal ' to him in a controversy such as this. Similar provisions have been in the statutes since 1822 (see chapter 256 of the laws of that year). Since the Commissioner's determination of this controversy is not shown to have been ' purely arbitrary ', it was and is final and binding on petitioner and his colleagues ". In the *Matter of Adler* v. *Wilson* (282 App. Div. 418) the Appellate Division, Third Department, after discussing the *merits* of a question that had been before the Commissioner of Education under section 310, said (p. 426): " We conclude that the decisions of the commissioner were not contrary to law and were neither arbitrary nor capricious. The order appealed from should be affirmed ".

This company has over a billion dollars of insurance contracts outstanding. For the protection of policyholders and their families and the financial integrity of the company itself, it was the plain duty of management to give serious thought and to take proper action for the protection of vital records, if the company was successfully to survive. Payments to policyholders are based on accounting records and documents, and without them, the company is without protection against false or fictitious or exaggerated claims. Management would be derelict in its duty if it did not take reasonable precautions in the light of the danger of disaster in the atomic target in which the records are now filed. This was a necessary, reasonable and proper exercise of prudence and foresight. The action of the directors and officers was eminently sound.

The inaccuracy of the claim that Guardian provided " a somewhat indefinite program " is revealed when one examines petitioner's Exhibit " F " and other following exhibits printed in this record which presented to the superintendent full and detailed plans of the company's objectives.

References to the Alcoholic Beverage Control Law are obviously neither appropriate nor controlling here. That law provides at the very outset thereof (§ 2, Policy of State and purpose of chapter) that the Liquor Authority's power to determine public convenience or advantage is " subject *only to* the right of judicial review *hereinafter provided for* " (italics mine throughout). No such restrictive language is found in our Insurance Law.

It is true, the company at the outset acquired the White Plains property not as requisite for the convenient accommodation of its business, but as an investment for rental; and as such

it should be noted no statutory approval of the superintendent is required. In the course of the hearings, Mr. Smith, associate counsel for the Insurance Department, expressly stated that the attorney for the insurance company and he had agreed that Guardian's application for approval should be deemed amended so that the company moved " solely at this time for permission for acquisition of property under 81 (7) b ". The company's attorney " So conceded ". That should completely and finally dispose of any question of uncertainty.

We should follow the *Hotchkiss* case (*supra*) which vindicated the court's power to review the " approval " of the superintendent in precisely such a state of facts construing precisely the same statutory language. The real property is requisite for the convenient accommodation of the transaction of this insurance company's business. There is no substantial evidence in the record to the contrary meeting all the essential facts established. In the light of all the facts adduced, including the numerous examples of many other successful corporations that have moved to suburban cities, and the Government announced need to decentralize and provide *as soon as possible* a safe place for essential company records outside New York City, the action of Guardian's directors and officers was legal and essentially sound and sensible.

The decision of the Special Term should be reversed, the determination of the Superintendent of Insurance annulled on the ground that it is contrary to the statutory criteria of section 81 (subd. 7, par. [b]). In view of the long delay that has already ensued and the serious and dangerous consequences to petitioner if approval is not expeditiously given, we think it unnecessary to remit the issues to the superintendent, but the superintendent should be directed to approve the acquisition of the real estate in question as requisite for the convenient accommodation of the Guardian Life Insurance Company of America in the transaction of its business; and we dissent accordingly.

BREITEL, J., concurs with BOTEIN, J.; CALLAHAN, J., concurs in affirmance in opinion; DORE, J. P., dissents and votes to reverse, in opinion in which COHN, J., concurs.

Order affirmed, with $20 costs and disbursements to the respondent.