Donald S. Taylor, J.
The respondents Adler, Nash, Feinstein, Mauer and Cohen are permanent employees of the petitioner, Board of Education of the City of New York (hereinafter the board). Three are public school teachers; one is a school clerk and one is a school principal. Each acknowledges past but denies present membership in the Communist party.
On March 17,1955 by amendment to its existing ‘ ‘ declaration of policy concerning Communist Party”, the Board authorized its Superintendent of Schools to require teachers and other employees whom he directed to appear before him, or his representative, to answer, under oath, inquiries concerning any matter under the jurisdiction of the Board and to disclose, upon such interrogation, any revelant information concerning any of its employees who may be, or may have been, members of the Communist party, including their identity.
Thereafter and pursuant thereto, the petitioner Jansen, as such Superintendent of Schools, by a duly authorized representative, undertook to question the defendant employees accordingly. Upon the grounds of conscience and moral scruple, all declined to identify other present employees of the school system known to them to have been, or who then were, members of the Communist party. Thereupon, the Superintendent of Schools suspended them from their employment and instituted disciplinary action designed to .terminate their tenure.
The defendent employees appealed to the Commissioner of Education to stay the actions of the petitioners. After oral and written argument on August 7, 1956, the Commissioner of Education enjoined the board and superintendent from directing the defendant employees of the board to identify other present employees thereof who had been, or now are, members of the Communist party except the defendant Cohen who, as a school principal, was directed to name any person in his particular school whom he knows or believes to be a Communist. In effect, the commissioner determined that the refusal of the defendant employees to submit to the interrogation furnishes no basis for disciplinary action by the petitioners.
In this proceeding instituted pursuant to article 78 of the Civil Practice Act the petitioners seek to review and to vacate and set aside the determination of the commissioner on the grounds that it is illegal, arbitrary and capricious.
*455 The petitioners argue that the interrogative process has none of the sinister aspects of an inquisition, was conducted fairly and protectively from the employees’ standpoint and without publicity; that for a three-year period during which it has been employed the salutary result of eliminating subversive teacher employees from the sensitive climate of the schoolroom has been achieved; that similar techniques are commonly and effectively used by prosecutors to ferret criminal conspiracies; that to forbid its use is in contravention of the so-called Feinburg Law (Education Law, § 3022; L. 1949, ch. 360) and the rules which implement it; that since no teacher has ever appeared voluntarily to reveal information about subversive activities in the New York school system and since other sources of information are becoming increasingly unavailable, the Board’s investigative procedures will be frustrated at the vital point of preliminary interrogation if the action is stayed.
The commissioner, supported by the other respondents, contends the issue is one affecting the conditions and relationships under which teachers and other employees are to work in the State education system and that his decision represents a determination of policy at which he arrived in the exercise of his best judgment and is, therefore, impervious to judicial review.
In a controversy such as this the ambit of judicial power to interfere with the commissioner’s decision is a limited one. His determination is, by section 310 of the Education Law, “ final and conclusive, and not subject to question or review in any place or court whatever.” In construing this section the courts have long been committed to the principle that a determination of the Commissioner of Education in matters relating to the vast educational system of the State is final, binding and not subject to question or review unless arbitrary. (Matter of Board of Educ. of Union Free School Dist. No. 1 v. Wilson, 303 N. Y. 107; Matter of Levitch v. Board of Educ. of City of N. Y., 243 N. Y. 373, reargument denied 244 N. Y. 505; People ex rel. Board of Educ. v. Graves, 243 N. Y. 204; Barringer v. Powell, 230 N. Y. 37; Bullock v. Cooley, 225 N. Y. 566; Matter of Hauser v. Wilson, 2 A D 2d 427; Matter of Beam v. Wilson, 279 App. Div. 277; Matter of Craig v. Board of Educ. of City of N. Y., 262 App. Div. 706; Matter of Fabricius v. Graves, 254 App. Div. 19, reargument denied 254 App. Div. 913; Matter of Cochran v. Levy, 175 Misc. 666, affd. 263 App. Div. 921.)
The resolution of the problem presented by the employees’ appeals required the exercise of the judgment of the Commissioner of Education as the chief executive officer of the State school system in a controversial area involving the adminis *456 trative policy of a member Board of Education. His decision states the reasons which impelled his conclusion that in the overall administration of the public school system “ the institution of the policy under consideration here would do more harm than good.”[1] The view of the commissioner in the arguable field *457 of judgment and opinion[2] cannot be said, as a matter of law, to lack rational basis and the court would not be warranted in annulling Ms determination if it arrived at the conclusion that the board’s policy should be sanctioned and not rejected. (Matter of Hauser v. Wilson, supra, p. 430.) Neither the Feiuberg Law nor the Rules of the Board of Regents wMch implement it provide for the dismissal of a public school employee for refusing to disclose to the school board information about the subversive affiliation of a coemployee. (Cf. Matter of Ross v. Wilson, 308 N. Y. 605.) The issue determined in Matter of Adler v. Wilson (282 App. Div. 418, motion for leave to appeal denied 306 N. Y. 981) concerned personal and not derivative disclosure of Communist party membership.
Finally, the petitioners argue that the commissioner’s determination in this instance is inconsistent with his memorandum decision in Matter of Hughes handed down concurrently therewith. The commissioner’s requirement that Hughes divulge certain statistical information not connected with the disclosure of the identity of any of his associates, which compulsive disclosure the commissioner there, as here, specifically forbade, indicates no inconsistency in his determinations.
After full consideration of the petitioner’s contentions, in my judgment the determination of the commissioner is not illegal, arbitrary or capricious. It follows that a case for judicial interference has not been made out. The commissioner’s determination is confirmed and the petition is dismissed on the merits, without costs.
Submit order accordingly.

 The commissioner’s decision provides, in part, as follows: “ A great deal of interest in this controversy has developed. Not only have the parties herein argued their respective positions at full length but other persons, as well as several organizations, have seen fit to acquaint me with their position in the matter. In Matter of Baronofsky (76 N. Y. St. Dept. Rep. 32), my predecessor Commissioner Lewis A. Wilson in commenting on this issue said: ‘ a board of education is without power to require a teacher to answer questions relating to his possible knowledge of other persons who may have been associated with the Communist party.’ While agreeing with Commissioner Wilson in his conclusion, I do not dispose of this case on the question of the board’s legal power. The problem is a much deeper one and affects the administration of our entire education system. There is near unanimity on the part of the teachers throughout the State that indiscriminate use of this type of interrogation immediately engenders an atmosphere of suspicion and uneasiness in the schools and colleges. Trust which is necessary to keep morale at a high level is undermined. No one knows when the finger of suspicion may be pointed at him. It is notorious that part of the Communist philosophy encompasses falsehood as a means to an end. The allegation by a member or former member of this organization standing alone could well be untrustworthy, yet it levels a deadly suspicion which is most difficult to disprove. The literature of Communists who have recanted specifically sets forth allegations that their ilk have deliberately named persons who have had no connection with the organization for party reasons. Even if a person so named is exonerated by lack of proof or is able to develop sufficient proof to allay suspicion, he is marked for life. The instant a name is uttered the public becomes aware of it. A school system which sets one teacher against another in this manner is not conducive toward the strength and cohesion which needs to exist in order to instill character into the student body. * * * The respondent board now insists that unless they can require any employee to name any person whom he accuses of being a Communist they are ‘ thwarted at a vital stage.’ I am convinced that this is not so. The Courts have quite recently indicated that a board of education cannot convict a teacher of being a Communist unless that board can establish its case after a jury trial. In my judgment the board is most optimistic if it believes that a jury will convict on the flimsy evidence of informers. It is, of course, perhaps true that the board, when the name is known, might be able to obtain corroborating evidence. It is also possible for the board to call the teacher in and ask whether he or she is a Communist. The argument that the board needs someone to name names is of no value here because the board in any event can call in any teacher or for that matter all teachers and ask if they are Communists. In case of denial the board is still up against the necessity of obtaining proof and the use of an informer is of little value. I am convinced in the overall administration of the public school system that the institution of the policy under consideration here would do more harm than good and that this type of inquisition has no place in the school system. Consequently I must find that the Board of Education may not properly utilize it.”

 In reply to a critic o£ his action, the Superintendent of Schools wrote: “Although I believe that failure to name names by itself may not be a basis for the charge of insubordination, on the other hand, it is only fair to state that the Board of Education has received an opinion from its attorney (The Corporation Counsel) that teachers can be compelled to give names or face such a charge. The Board of Education, therefore, directed that the charges be filed so that the issue may be clarified in the proper manner. * * * I have received or read statements from many sincere people on both sides of the question * * *. The present cases present an opportunity for a definite decision on tMs difficult problem.”