In the Matter of GUARDIAN LIFE INSURANCE COMPANY OF AMERICA, Appellant, against ALFRED J. BOHLINGER, as Superintendent of Insurance of the State of New York, Respondent.

Argued October 12, 1954; decided December 31, 1954.

*James B. Donovan, MacNeil Mitchell, Daniel J. Reidy* and *Clarke S. Ryan* for appellant. I. The statutory duty of the Superintendent under paragraph (b) of subdivision 7 of section 81 of the Insurance Law was to enforce that statute, i.e., to review the determination of Guardian's management that the property is " requisite for its convenient accommodation in the transaction of its business." (*Matter of Barry v. O'Connell*, 303 N. Y. 46; *Matter of Rochester Gas & Elec. Corp. v. Maltbie*, 298 N. Y. 867; *Matter of Northwestern Nat. Ins. Co. v. Pink*, 288 N. Y. 359; *Matter of Small v. Moss*, 279 N. Y. 288; *Matter of Picone v. Commissioner of Licenses*, 241 N. Y. 157; *People ex rel. Metropolitan Life Ins. Co. v. Hotchkiss*, 136 App. Div. 150; *Metropolitan Life Ins. Co. v. Durkin*, 301 N. Y. 376; *Van Schaick v. Carr*, 170 Misc. 539.) The instant acquisition by Guardian clearly conforms to the standard in paragraph (b) of subdivision 7 of section 81 of the Insurance Law, and the Superintendent's decision of disapproval is contrary to law and unsupported by the evidence. (*Matter of Ralph v. Board of Estimate of City of N. Y.*, 306 N. Y. 447.) III. The determination of the Superintendent is subject to judicial review. That determination should be annulled as contrary to law and fact. The order of the Appellate Division upholding that determination should be reversed. (*Matter of General Reinsurance Corp. v. Pink*, 243 App. Div. 153, 269 N. Y. 347; *Matter of Calvary Presbyt. Church v. State Liq. Auth.*, 249 App. Div. 288, 275 N. Y. 552; *Securities Comm. v. Chenery Corp.*, 332 U. S. 194.)

*Robert M. Benjamin* for Life Insurance Association of America, *amicus curiæ*, in support of appellant's position. I. The determination of the Superintendent of Insurance is subject to judicial review. (*Matter of Schwab v. McElligott*, 282 N. Y. 182; *People ex rel. Metropolitan Life Ins. Co. v. Hotchkiss*, 136 App. Div. 150; *Matter of Kelly & Romano v. Van Schaick*, 156 Misc. 521; *Matter of Calvary Presbyt. Church v. State Liq. Auth.*, 249 App. Div. 288, 275 N. Y. 552; *Matter of Chapin v. Board of Educ. of City of Buffalo*, 291 N. Y. 241.) II. The courts below erred as to respondent's power of withholding approval. (*Matter of Picone v. Commissioner of Licenses*, 241 N. Y. 157; *People ex rel. Empire City Trotting Club v. State Racing Comm.*, 190 N. Y. 31; *People ex rel. Delaware & Hudson Co. v. Stevens*, 197 N. Y. 1.)

*Nathaniel L. Goldstein, Attorney-General (Samuel A. Hirshowitz* and *Wendell P. Brown* of counsel), for respondent. I. The particular action of the Superintendent was not subject to review in an article 78 proceeding. (*Matter of Millman* v. *O'Connell,* 300 N. Y. 539; *Switchmen's Union* v. *Board,* 320 U. S. 297; *Labor Bd.* v. *Cheney Lbr. Co.,* 327 U. S. 385; *Federal Communication Comm.* v. *R. C. A. Communications,* 346 U. S. 86; *Matter of Schwab* v. *McElligott,* 282 N. Y. 182; *People ex rel. Smith* v. *Hoffman,* 166 N. Y. 462; *Matter of Calvary Presbyt. Church* v. *State Liq. Auth.,* 249 App. Div. 288, 275 N. Y. 552; *Reckler* v. *Quinn,* 255 App. Div. 873; *Matter of Roden* v. *New York State Liq. Auth.,* 258 App. Div. 1076; *Matter of Sheridan* v. *McElligott,* 278 N. Y. 59.) II. The action of the Superintendent was not arbitrary but was in accordance with the discretion reposed in him. (*People ex rel. Hartford Life & Annuity Ins. Co.* v. *Fairman,* 12 Abb. N. C. 252, 91 N. Y. 385; *Matter of Glenram Wine & Liq. Corp.* v. *O'Connell,* 295 N. Y. 336; *Matter of Standard Bitulithic Co.,* 212 N. Y. 179; *People ex rel. Kennedy* v. *Brady,* 166 N. Y. 44; *Matter of Sacharoff* v. *Corsi,* 294 N. Y. 305; *Matter of Brenner* v. *Bruckman,* 253 App. Div. 607, 278 N. Y. 503; *Matter of Stachura* v. *O'Connell,* 271 App. Div. 162; *Jordan* v. *American Eagle Fire Ins. Co.,* 169 F. 2d 281; *Interstate Commerce Comm.* v. *Parker,* 326 U. S. 60; *Pincourt* v. *Palmer,* 190 F. 2d 390.) III. The Superintendent is not merely a " reviewing officer." He is authorized to exercise his independent judgment and discretion. (*People ex rel. Schau* v. *McWilliams,* 185 N. Y. 92; *Matter of General Reinsurance Corp.* v. *Pink,* 269 N. Y. 347; *Swan* v. *Mutual Reserve Fund Life Assn.,* 155 N. Y. 9; *Russell* v. *Pittsburgh Life & Trust Co.,* 132 App. Div. 217; *Stern* v. *Metropolitan Life Ins. Co.,* 169 App. Div. 217; *Matter of People [International Workers Order],* 199 Misc. 941, 280 App. Div. 517, 305 N. Y. 258, 54 Col. L. Rev. 648; *President & Directors of Manhattan Co.* v. *Kaldenberg,* 165 N. Y. 1; *Washington Life Ins. Co.* v. *Clason,* 162 N. Y. 305; *McClure* v. *Levy,* 79 Hun 235; *Matter of Cook* v. *Burton,* 276 App. Div. 808; *Matter of Buck* v. *Hurd,* 281 App. Div. 115, 307 N. Y. 730.) IV. No formality was required in the notice of disapproval. The decision constituting such notice conforms with statutory requirements. (*Matter of Barry* v. *O'Connell,* 303 N. Y. 46, 305 N. Y. 633; *Matter of Elite Dairy Products* v. *Ten Eyck,* 271

N. Y. 488; *Matter of Savoy Associates* v. *Valentine*, 266 App. Div. 63; *Securities Comm.* v. *Chenery Corp.*, 318 U. S. 80; *Helvering* v. *Gowran*, 302 U. S. 238.)

FULD, J.   In this Article 78 proceeding, we are called upon to decide whether certain action taken by the Superintendent of Insurance is subject to judicial review.

To purchase real estate as an investment (Insurance Law, § 81, subd. 7, par. [h]), a domestic insurance company does not require the Superintendent's approval, while, to acquire real estate for use in its own business, such approval is essential (Insurance Law, § 81, subd. 7, pars. [a], [b]).[1]   In the case before us, the Superintendent denied an application made to him by Guardian Life Insurance Company for approval to purchase real property in White Plains, Westchester County, which it proposed to occupy under paragraph (b) of subdivision 7 of section 81.

Guardian is at present housed in a twenty-story home office building on Union Square in New York City, in which it occupies about 60% of the space, renting out the remainder to various tenants.   It has spent over $400,000, since 1946, in modernizing that office, and, in addition, owns two adjoining properties, which it had acquired, some years before, for " expansion " purposes.

In 1950, Guardian decided to explore the possibility of moving its principal office to Westchester County.   As a temporary measure, and until a site could be found, the company resolved

---

1. Insofar as here relevant, section 81 of the Insurance Law provides:

" The reserve investments of a domestic insurer shall consist of the following:
* * *

" 7. Real estate.   Real estate only if acquired or used for the following purposes and in the following manner:

" (a) The land and the building thereon in which it has its principal office.

" (b) Such as shall be requisite for its convenient accommodation in the transaction of its business.
* * *

" (h) Such real property * * * as may be acquired, as an investment for the production of income, or as may be acquired to be improved or developed for such investment purpose pursuant to an existing program therefor * * *.

" No real property shall be acquired by any domestic insurer pursuant to paragraphs (a), (b), (d), or (e) of this subsection seven, except with the approval of the superintendent."

to obtain space for the use of some of its departments by renting or building in the Westchester area. It could not find, and has not yet (four years later) found, a plot appropriate for a new home office. However, in the course of its search, the company located property which it considered an "ideal site for an investment in an office building", but not suitable for a principal office. It was decided that the property be purchased for "rental", but with the thought in mind of designing the building so that it could be used for its accounting activities and for temporary storage of its records. In line with that thinking, Guardian's executive committee authorized "the purchase, under the provisions of Section 81, subsection 7(h)", expressly noting that it was proposed to erect a building "which would be suitable for company occupancy in whole or in part."

When the chief of the Life Bureau of the Insurance Department learned of this action, he notified Guardian that it was not possible to handle the transaction in the manner contemplated, that the company would have to decide whether the property was being acquired for the "convenient accommodation * * * of its business" — under subdivision 7(b) — or as an investment — under subdivision 7(h). Despite that monition, Guardian persisted in acting under both subdivisions. Characterizing the acquisition as "essentially an investment plan," it sought "consideration of the Superintendent for our using such facilities under * * * Subsection 7(b)." However, without seeking or waiting for official approval, Guardian proceeded to purchase the property in October of 1951; it was not until January, 1952, that the company made a formal application under subdivision 7 (b).

Some time later, after the Superintendent had indicated that he did not "look with favor" upon the application, Guardian was offered a hearing. At that hearing — which the company urged was statutory, but which the hearing commissioner ruled was not [2]— there was testimony indicating that Guardian's plans

---

2. The hearing commissioner was unquestionably correct since the statute does not provide for a hearing and the exercise of the Superintendent's power did not adversely affect "property rights". (Cf. *Matter of Hecht* v. *Monaghan*, 307 N. Y. 461, 468; *Matter of Glenram Wine & Liq. Corp.* v. *O'Connell*, 295 N. Y. 336, 342; see, also, 1 Benjamin on Administrative Adjudication [1942], pp. 89-90, 94.)

were most uncertain and indefinite and that its home office building and the adjoining properties — in which the possibilities for expansion had not even been considered — provided adequate space and facilities.

At the conclusion of the hearing, the Superintendent refused to approve the purchase. Noting Guardian's indecision and uncertainty, as well as the " interim " character of its project, which would, nevertheless, cost " upwards of $1,300,000 ", the Superintendent disapproved the company's petition, concluding, and we use the language of the statute, that the property was not " requisite for its convenient accommodation in the transaction of its business" (Insurance Law, § 81, subd. 7, par. [b]).

The court at Special Term, declining to pass upon the Superintendent's contention that his action was not subject to judicial review, upheld the determination upon the ground that it was adequately supported by the record. The Appellate Division affirmed by a divided court. Two of the three majority justices expressed the opinion that the Superintendent's action was not " subject to more than a threshold judicial review ", while the third justice, following Special Term's lead, simply concluded that there was no basis for disturbing the determination.

Although the courts will be exceeding slow to rule that the discretion of an administrative officer or board " may be exercised unhampered by judicial review " (*Matter of Schwab* v. *McElligott,* 282 N. Y. 182, 186), it is settled that the legislature may, if it sees fit, provide that certain action " is not a matter open to [such] review " (*Matter of Millman* v. *O'Connell,* 300 N. Y. 539, 540; see, also, *Matter of Schwab* v. *McElligott, supra,* 282 N. Y. 182, 186; *Reckler* v. *Quinn,* 280 N. Y. 768; *Matter of Calvary Presbyt. Church* v. *State Liq. Auth.,* 275 N. Y. 552; *Switchmen's Union* v. *Board,* 320 U. S. 297, 300; cf. *F. C. C.* v. *RCA Communications, Inc.,* 346 U. S. 86, 90). In our view, the legislature has so provided here. Carefully and deliberately, it has selected those actions of the Superintendent which are to be subject to judicial review, and those which are not, unequivocally indicating which action is appealable and which

is not. Thus, section 34 of the Insurance Law announces that

> " Whenever by the provisions of this chapter any order or other act of the superintendent is declared to be subject to judicial review at the suit of any person, such person may maintain a proceeding under article seventy-eight of the civil practice act."

And, thereafter, throughout the statute, the legislature granted the right of appeal of this or that action of the Superintendent, by specifically declaring that it " shall be subject to judicial review " (see, e.g., § 40, subd. 7; § 51, subd. 5; § 117, subd. 2). In many instances — including the section here under consideration (§ 81) — there is no such declaration, plainly establishing that such action on the part of the Superintendent was not intended to be subject to review.

Section 34 does not, it is true, in so many words prohibit judicial review where not expressly prescribed, but that is the necessary and plain meaning of the provision, particularly when considered in context, along with the other sections to which we have adverted. Any other construction would, as Judge Botein wrote below, stamp section 34 " as a meaningless and unnecessary reaffirmation of the rights of an aggrieved party to pursue his remedies pursuant to article 78 of the Civil Practice Act; and the implication naturally follows that when the right is not specifically granted, article 78 may not be invoked " (284 App. Div. 110, 114). And, when we study the history of section 34 — the original statute, the amendatory proposal offered by various groups, the law as it finally read as the result of suggestions and countersuggestions, arguments and counterarguments — it becomes even more manifest that it was the legislative design that the Superintendent's actions be reviewable only where the statute expressly so provided.

The predecessor to section 34 — section 61 — had simply provided for a stay of the Superintendent's determination while certiorari proceedings were pending (L. 1936, ch. 625). When the Insurance Law was being revised in 1939 — under the auspices of the Joint Legislative Committee on Revision of Insurance Laws — the legislature received constant suggestions and advice from various insurance groups as well as from the

Committee on Insurance Law Revision of the State Insurance Department. With respect to the old section 61, the Association of Life Insurance Companies filed a memorandum with the legislature under date of July 15, 1938, asking that it " Strike this entire section " and enact a statute granting broad judicial review, indeed, a review of any and every act and order of the Superintendent. More particularly, the Association recommended enactment of a section which would " give insurers and their representatives a general right of appeal or review."[3] The Superintendent, as well as the Committee on Insurance Law Revision, vigorously opposed the effort; it was their judgment that the proposal would permit review of " many acts for which judicial review is not appropriate." (See, e.g., Memorandum in Reply, Submitted by Committee on Insurance Law Revision, p. 4.) The legislature, rejecting the suggestions of the insurance groups, followed the Superintendent's recommendations and struck from the proposed new section the language granting a general right of appeal. The end result was enactment of section 34 as it reads today (*supra,* p. 181.)

In the light of this history, the conclusion seems inescapable that the legislature accorded " the right of review to such orders or other acts of the superintendent as are declared to be subject to judicial review by the provisions of the act, and then the procedure is directed to be under Article 78 of the Civil Practice Act ". (Thacher, The New York Insurance Law and its Review, American Bar Assn., Section on Insurance Law [1939–1940], p. 95.)

We deem it clear, as already noted, that, in expressly providing for review in some sections of the Insurance Law and making no provision for such review in other sections, the legislature followed a consistent and purposeful pattern. Provisions for licensing and revocation of licenses, as well as for

3. Had the recommendation been accepted, section 34 would have added the bracketed matter: *"Judicial Review of Acts of Superintendent.* Whenever by the provisions of this chapter any order or other act of the superintendent is declared to be subject to judicial review, [or whenever any insurer or person subject to the provisions of this chapter is aggrieved by any order or other act of the superintendent] such insurer or person may maintain a proceeding under article seventy-eight of the civil practice act  *  *  *."

consolidation and conversion of insurers, carry authorizations for review (e.g., Insurance Law, § 40, subd. 7; § 51, subd. 5; § 117, subd. 2; §§ 486, 487), while, on the other hand, provisions to protect policyholders against unwise, improvident or illegal expenditures of company moneys generally do not provide for judicial re-examination (e.g., Insurance Law, §§ 70-75, 81, 85, 101-103, 195). The legislature thus reflected its design that decisions of the Superintendent involving investments and finances — in which field flagrant abuses had been uncovered in the investigation by the Armstrong Committee — should be final and that he should not be subjected to judicial review to justify the action taken by him.

That is not to say, however, that there is to be no judicial scrutiny whatsoever. Even where judicial review is proscribed by statute, the courts have the power and the duty to make certain that the administrative official has not acted in excess of the grant of authority given him by statute or in disregard of the standard prescribed by the legislature. (Cf. *Matter of Barry* v. *O'Connell*, 303 N. Y. 46, 52; *People ex rel. Metropolitan Life Ins. Co.* v. *Hotchkiss,* 136 App. Div. 150.) So, here, for instance, the courts will decide whether or not the Superintendent, in reaching his conclusion, employed the standard fixed by the statute, namely, whether the property purchased by Guardian was or was not " requisite for its convenient accommodation in the transaction of its business." There can be no doubt here that the Superintendent did make his determination solely with that standard in mind. Not only did he explicitly state that Guardian's present New York City quarters " are [not] inadequate for the convenient transaction of its business," but he made findings necessarily leading to the conclusion that the purchase was not required for the convenient accommodation of the company's business.

The fear has been expressed that absence of judicial review may encourage abuse of administrative power by the Superintendent of Insurance. If there is any basis for that fear, it is a consideration to be addressed to the legislature whence came the provision proscribing appeal in this sort of case.

The order of the Appellate Division should be affirmed, with costs.

VAN VOORHIS, J. (concurring). I concur in the result upon the ground that although jurisdiction exists to review the determination of the Superintendent of Insurance, there is no showing that his refusal to consent to the purchase of this real property in White Plains for plaintiff's own use was arbitrary, in view of plaintiff's failure to show how this parcel fitted into any comprehensive and coherent plan for the removal of plaintiff's home office to White Plains.

LEWIS, Ch. J., CONWAY, DESMOND, DYE and FROESSEL, JJ., concur with FULD, J.; VAN VOORHIS, J., concurs in result in a separate memorandum.

Order affirmed.