GUSTAVE B. GARFIELD, Respondent, v. EQUITABLE LIFE ASSURANCE SOCIETY OF THE UNITED STATES, Appellant.

First Department, October 26, 1965.

*Eugene T. O'Neill* of counsel (*Valentine A. Meehan* and *Zave Kubersky* with him on the brief), for appellant.

*Charles Trynin* for respondent.

STEVENS, J. This is an appeal by defendant from an order entered July 13, 1965 which denied its motion for an order dismissing the complaint and for a protective order vacating plaintiff's notice to examine defendant before trial by several of its officers and directors.

Plaintiff instituted the present action to recover the allowance for counsel fees and for reimbursement of expenses with respect to two actions, both unsuccessful, instituted by him as a policyholder of defendant.

The defendant (herein referred to as Equitable), a mutual life insurance company organized under New York law in 1859, acquired property in Pittsburgh pursuant to a redevelopment contract entered February 14, 1950 with the Urban Redevelopment Authority of the City of Pittsburgh. The property, acquired by condemnation, was transferred to Equitable between the years 1950 and 1953, and consisted of approximately 23 acres. It appears that development was contemplated in three phases, the last phase of which has been or is about to be completed. The total cost to the defendant at the time of this action has exceeded $88,000,000. The initial phase, primarily involved here, consisted of a three-building complex completed in 1953.

The plaintiff, a policyholder of the defendant, sometime about November, 1953 commenced an article 78 proceeding against the then Superintendent of Insurance and others and this defendant in which he sought to compel the Superintendent of Insurance or, in the alternative, the Attorney-General of the State of New York to institute proceedings against Equitable, its officers and directors, on the ground that the investment in Gateway Center Project (Gateway) in Pittsburgh exceeded the lawful allowable investment by Equitable in real estate in contravention of paragraph (h) of subdivision 7 of section 81 of the New York State Insurance Law (*Matter of Garfield* v. *Holz*, 1 A D 2d 820). His initial application was denied without prejudice to a renewal thereof after the Attorney-General had an opportunity to investigate. After an investigation by the Attorney-General of the State of New York both the Attorney-General and the Superintendent of Insurance concluded there was no basis for the maintenance of an action for waste and declined to institute action. (Cf. *Matter of Guardian Life Ins. Co.* v. *Bohlinger*, 308 N. Y. 174.) Thereafter the plaintiff's application was dismissed (130 N. Y. S. 2d 320) and such dismissal was affirmed on appeal

(1 A D 2d 820), the Appellate Division stating: "It may not be said that the refusal of the Superintendent of Insurance and the Attorney-General, was without reasonable basis." In March, 1956 plaintiff instituted a derivative action against Equitable and some of its directors, claiming illegality, *ultra vires* and waste of corporate funds on the part of Equitable. He also sought to have Equitable dispose of its investment in Gateway. Following institution of such action, and in August, 1956, plaintiff sought to have the Superintendent of Insurance and the Attorney-General of New York take action with respect to his charges. In November, 1956.the Attorney-General replied to plaintiff's counsel, informing him that the Superintendent of Insurance had investigated and found no basis in fact for plaintiff's allegations. In view thereof no action by the Attorney-General was indicated. Various motions were made with respect to the pleadings with the result that in plaintiff's fourth amended complaint, served in September, 1960, plaintiff charged only improvidence in the expenditures made in connection with Gateway and impropriety in the retention of undeveloped portions of the project, some of which was then being used as parking space. After a trial judgment was rendered in favor of defendants, and this court is presently affirming such judgment in a companion appeal. (24 A D 2d 840.)

In support of this action for counsel fees and expenses plaintiff claims two benefits resulted to Equitable from the litigation pursued by him. He claims first that he established the right of a policyholder to prosecute a derivative action in behalf of a mutual insurance company. There may be some question whether he in fact did establish such right, but a declaration thereon is not essential to disposition of this appeal. Certainly if it were established it would in this instance have been an empty right for it is not shown that any benefit accrued to Equitable as a result. He claims the further benefit was that by prosecution of his actions he caused the defendant to invest more money in the project with the result that it is presently a successful financial development. It may be noted that his position has changed substantially from the initial claims of illegality, improvidence and waste. He now asserts that his actions provided the necessary stimulus for the defendant to make a successful development of an investment which plaintiff originally considered a waste.

There was no competent proof in the actions instituted by plaintiff that the directors of Equitable acted from ulterior motives or other than to serve the best interests of the defendant. Honest endeavors to correctly anticipate developments

are not to be penalized where the directors exercise good faith and honest business judgment. (See *Marony* v. *Applegate*, 266 App. Div. 412.) The fact that delayed development of a project may not coincide with the views held by a particular stockholder or policyholder of the company may be unfortunate, but does not establish waste, and when acceleration of development of that project occurs, that single fact will not establish such stockholder as the motivating factor for the change in pace or the increased investment. The assertion by plaintiff that the institution and prosecution of his actions spurred and dictated defendant's acts which culminated in a successful financial investment is without support in the record. Nor has it been established that the charges of improvidence and illegality were justified when made initially; in fact the respective positions taken by the Superintendent of Insurance and the Attorney-General of the State of New York would seem to negate that contention.

Equating the position of plaintiff, a policyholder, to that of a stockholder in a corporation, as was previously done in an earlier phase of these proceedings (*Garfield* v. *Equitable Assur. Soc.*, 7 Misc 2d 283), we apply the same standards as requisite to recover for counsel fees and expenses. In order for plaintiff to recover fees and expenses he must show either that some new asset or fund was created or that defendant derived some substantial benefit from his efforts. (*Marine Midland Trust Co.* v. *Forty Wall St. Corp.*, 13 A D 2d 118, affd. 11 N Y 2d 679; *Nemerov* v. *Empire Power Corp.*, 269 App. Div. 989, mot. for lv. to app. den. 295 N. Y. 991; *Masholie* v. *Salvator*, 269 App. Div. 846.) See, also, section 67 of the General Corporation Law, as to when an award is made. *Ripley* v. *International Rys. of Cent. America* (12 N Y 2d 814) referred to herein, is not to the contrary. In that case Mr. Justice VALENTE expressly found that "recovery in a substantial amount was obtained" (16 A D 2d 260, 263) on behalf of the defendant corporation and termed "improvident" the inclusion by the Referee of a particular sum in fixing the allowances. The sum referred to was apparently created as a result of activities on the part of the defendant which were induced by inquiries made by plaintiff's counsel, plaintiff in that case being one of the stockholders. As the court there pointed out, together with reasons therefor: "That management moved in order to forestall a derivative action is immaterial" (p. 264). A similar observation might be validly made in this case if we assume *arguendo* that the pace of the projects developed was quickened because of the actions instituted by plaintiff. However, an examination of

some of the exhibits in this case does not support plaintiff's contention that it was so caused. Of course, in the *Ripley* case the aspect of public policy did not require the elimination from consideration of the benefit to the corporation which arose from an increase in rates which had been obtained. It was in that connection that the court observed (pp. 264–265): "Beneficial acts performed by the corporation — if the result, in whole or in substantial part, is attributable to the stockholders' litigation — may be a valid basis to claim compensation." *Martin Foundation* v. *Phillips-Jones Corp.* (204 Misc. 120, mod. and affd. 283 App. Div. 729, affd. 306 N. Y. 972) cited by plaintiff, may also be distinguished. In that case the three proposed contracts which were cancelled, further consideration of the same having been discontinued as a result of the institution of an action by the plaintiff stockholder, were characterized by the Official Referee as "somewhat extravagant" and designed to feather the nests of the three officers "and those of some members of their families" (p. 123). The Appellate Division in modifying the allowances and otherwise affirming, found that the only certain benefit to the corporation was for it to be "relieved from having to resist any action the plaintiffs might have instituted to invalidate the proposed contracts if they had been adopted by the stockholders" (p. 730). In both the *Ripley* and *Martin* cases it was expressly found that beneficial results were achieved because of the stockholders' actions. In the instant case the contrary has been found. Had plaintiff prevailed in his initial charges of waste, etc., and succeeded in enjoining Equitable, Equitable might have sustained a grave loss. The charges of improvident expenditures and improper retention of land for use as parking lots which eventually came to trial were not sustained, and in fact it was determined that the investment proved successful.

The order should be reversed on the law, and the motion to dismiss the complaint granted, with costs and disbursements to appellant. In view of this disposition the appeal from the order denying a protective order should be dismissed, without costs or disbursements since it has become academic.

RABIN, J. P., VALENTE, EAGER and STEUER, JJ., concur.

Order entered on July 9, 1965 unanimously reversed, on the law, with $30 costs and disbursements to appellant, and the motion to dismiss the complaint granted, with $10 costs.

Appeal from order entered on July 9, 1965, as denies, in part, defendant's motion for a protective order, dismissed as academic, without costs and without disbursements.