24 N.Y.2d 31 (1969)
In the Matter of Affiliated Distillers Brands Corp., Appellant,
v.
State Liquor Authority, Respondent.
Court of Appeals of the State of New York.
Argued January 14, 1969.
Decided February 20, 1969.
O. John Rogge, Milton C. Weisman, Roy H. Carlin, Max J. Halpern and Harold Bookman for appellant.
Milton Koerner and Hyman Amsel for respondent.
Judges BURKE, SCILEPPI, BERGAN, KEATING and JASEN concur with Chief Judge FULD; Judge BREITEL dissents and votes to affirm in a separate opinion.
*34 Chief Judge FULD.
The State Liquor Authority, in June of 1967, disapproved the application of the petitioner, Affiliated Distillers, for a brand label registration for its "Ancient Age Kentucky Straight Bourbon Whiskey, 86 Proof, 8 Years Old." The question on this appeal is whether, in so doing, the Authority exceeded the discretion given it by section 107-a of the Alcoholic Beverage Control Law (infra, pp. 36-37) which prohibits the sale of liquor without a brand label "registered and approved by the authority."
In passing on the application, the Authority found nothing wrong or misleading in the label submitted by the petitioner. It withheld its approval  and thereby prevented the petitioner from introducing its eight-year-old bourbon in the New York market  solely on the ground that, shortly before the date of the application, the petitioner had withdrawn from sale in New York a six-year-old bourbon, also 86 proof and also bearing the brand name "Ancient Age Kentucky Straight Bourbon", which continued to be sold in great quantity, and at lower prices than the eight-year liquor, in other parts of the country. The withdrawal of the lower-priced six-year-old bourbon and the nearly simultaneous proposal to introduce a more costly eight-year-old bourbon, similarly labeled except as to age, were characterized by the Authority as being "designed to circumvent" the *35 so-called "affirmation section" of the Alcoholic Beverage Control Law (§ 101-b, subd. 3, pars. [d]-[i]). Those paragraphs  (d) through (i)  (infra, pp. 37-38), in effect, require a distiller of whiskey to offer its products in New York at prices not higher than the lowest prices at which it sells them in any other State.
The petitioner brought this article 78 proceeding to compel the Authority to approve the label for its eight-year-old Ancient Age Whiskey.[1] In opposition, the Authority contended that its action did not fall within any of the categories listed in section 121 of the Alcoholic Beverage Control Law (infra, p. 40) and was, therefore, not judicially reviewable. It went on, nevertheless, to defend, on the merits, its conclusion that the petitioner's application was an attempt to evade the requirements of section 101-b. In the course of doing so  and this is most significant  the Authority conceded that there was a difference between the two kinds of whiskey.[2] It further indicated  and through counsel has explicitly stated on the argument in this court  that it would approve the eight-year label if the petitioner also continued to offer the six-year product in the New York market. The court at Special Term held that the denial of the registration was "without basis in fact" and "arbitrary and capricious" and remanded the matter to the Authority.
On appeal, a divided Appellate Division reversed. It concluded that section 107-a gave the Authority discretion with regard to approving brand label registrations, so as to give effect to the objectives of the other sections of the Alcoholic Beverage Control Law, section 101-b among them, and the court found adequate basis in the record for the Authority's determination. That action of the Authority, the court also held, was not subject to judicial review. The dissenting justice expressed the view that the statute only permitted the Authority to prevent discrimination in price between sales of like products in New York and in other states but did not empower it to *36 prevent a distributor from withdrawing from the New York market one of two admittedly different products. The action taken by the Authority being beyond its lawful powers, it was subject to judicial review, the dissenter went on to urge, notwithstanding section 121. With both of these conclusions we agree.
We turn, first, to section 107-a itself. Subdivision 4 of that section  the part with which we are mainly concerned  states, quite simply, that "[n]o liquor * * * shall be labeled, offered or advertised for sale" unless it is done "in accordance with" regulations of the Authority and unless "the brand or trade name label" affixed to the container of the beverage "shall have been registered with and approved by the authority and the appropriate fee paid".[3]
Under paragraph (a), the functions of the Authority are not  as the petitioner contends  purely ministerial. The Authority may, undoubtedly, exercise discretion to refuse to approve a label which would help an applicant to violate any part of the Alcoholic Beverage Control Law. However, and this is decisive, there is nothing in the statute prohibiting the conduct which the Authority freely acknowledges it was trying to prevent  namely, the withdrawal by the petitioner of its six-year-old bourbon from the New York market and the offering, at a higher price, of a similarly named but clearly labeled and concededly different eight-year-old whiskey instead. No matter how worthy the Authority's objective may seem from the point of view of the consumer, it appears to lack any legal foundation whatever.
Certainly, nothing in the remaining subdivisions of section 107-a itself helps to sustain the administrative action. Subdivision 2, the only other provision having possible relevance, runs counter to the claims of the Authority. Referring to regulations which the Authority is empowered to promulgate, subdivision 2 recites that they "shall be calculated to prohibit deception of the consumer", to provide him with "adequate *37 information as to quality and identity" and to "achieve national uniformity in this field in so far as possible." However, as we have pointed out, the Authority makes no claim that the proposed label is deceptive, false or incomplete in any respect. The Authority rests its case entirely on its professed purpose of giving effect to subdivision 3 of section 101-b  and to that portion of the statute we now turn.
The "affirmation" provisions, paragraphs (d) through (i) of subdivision 3 of section 101-b (L. 1964, ch. 531, § 9), reversed the State's long-standing policy of discouraging the reduction of liquor prices[4] and of enforcing the maintenance of retail prices at levels fixed by the distiller (former § 101-c; L. 1950, ch. 689, § 1).
In 1964, acting on the recommendations of a Moreland Act Commission and of the Governor, the Legislature repealed the resale price maintenance section of the statute (L. 1964, ch. 531, § 11).[5] In its declaration of policy, the Legislature stated that "consumers of alcoholic beverages in this state should not be discriminated against or disadvantaged by paying unjustifiably higher prices for brands of liquor than are paid by consumers in other states" (L. 1964, ch. 531, § 8). Going beyond the recommendations just mentioned, the Legislature also amended section 101-b by adding to its subdivision 3 the provisions which  as since amended and re-lettered (L. 1967, ch. 798, §§ 1-4)  are now paragraphs (d) through (i). They are unusual, if not unique, in the field of consumer protection.
Paragraph (d), the key to the amendments, requires the "owner" of a "brand of liquor" to include in the monthly schedule of prices it files with the Authority  the filing of the schedules themselves has been mandated since 1942 (§ 101-b, subd. 3, par. [a] [L. 1942, ch. 899, § 1])  a verified "affirmation * * * that the * * * price of liquor to wholesalers set forth in such schedule is no higher than the lowest price at *38 which such item of liquor will be sold" anywhere else in the country during the month for which such schedule is in effect. (Emphasis supplied.)[6] With respect to each "item," the underlying schedule must state, pursuant to paragraph (a) of subdivision 3, the "exact brand or trade name * * * nature of contents, age and proof where stated on the label". Paragraph (f) of that same subdivision, in effect, prohibits the purchase or sale of "any item" not covered by an affirmation.
Upon the most cursory reading, it is evident that amended section 101-b is a regulation of prices only and not a regulation of the kinds of liquor products which may or may not be sold in New York. The discrimination at which it is aimed is, manifestly, solely that involved in offering the same product at higher prices in this State than elsewhere. There is not a word in the statute which confers upon the Authority the power to forbid a distiller to withdraw one of its products from sale in New York or to make the offering of one of a distiller's products a condition to the approval of a label for a different product. It is true that, if a distiller sells only its more expensive whiskeys in New York, while making a wider selection of its products, including cheaper items, available in other states, it practices a kind of discrimination against the New York consumer. But, quite plainly, the Legislature did not undertake to control this kind of discrimination, nor  and this is most important  to establish any standards or criteria for doing so. Had such regulation been intended, the draftsman of the statute could readily have found clear and direct language to express the legislative purpose.
Nothing that we have said, of course, implies that a concerted withdrawal of cheaper products by distillers who should be in competition might not violate antitrust laws. (See U. S. Code, *39 tit. 15, §§ 1, 2; General Business Law, §§ 340-347.) Nor does the Authority lack power, under section 107-a, to exercise discretion with respect to new labels describing liquors which are not significantly different from one or more others, whether such others are still being offered by the distiller on the New York market or have been withdrawn from that market. In such cases, the Authority might well have basis for concluding that the manipulation of labels for what are, essentially, the same products undermines the price regulations established by amended section 101-b and violates reasonable standards of labeling under section 107-a.[7]
In the present case, however, it is the Authority itself, as already noted, which has determined that the two products are, in fact, different (supra, p. 35). Under these circumstances, it must be concluded that the Authority is not seeking to enforce the policies against price discrimination embodied in section 101-b but is attempting, instead, to enforce an unauthorized policy of its own directed against product discrimination. The Authority may not depart from the directives and standards laid down in the statute and legislate for itself to this extent.
We have left for the last the question  really the threshold question  of the reviewability of the Authority's action under section 107-a because what has been said thus far helps to dispose of it. Since the Authority's attempted regulation lies, in our opinion, completely beyond the scope of its statutory powers, the court may not be barred from hearing a challenge to the administrative action. As we noted in Matter of Guardian Life Ins. Co. v. Bohlinger (308 N.Y. 174, 183),
"Even where judicial review is proscribed by statute, the courts have the power and the duty to make certain that the administrative official has not acted in excess of the grant of authority given him by statute or in disregard of the standard prescribed by the legislature."
However, even if the Authority's action were well within the compass of section 107-a, it would not be immune to judicial review. Section 121 of the Alcoholic Beverage Control Law lists, *40 among the actions of the Authority which may be reviewed by the Supreme Court, "[r]efusal * * * to issue * * * a permit." The term "permit" is not defined in the statute (cf. Alcoholic Beverage Control Law, § 3, "Definitions"), although the word appears in many places (e.g., §§ 90 through 99-b). Since approval of a brand label registration enables the applicant to use the label, and denial of the registration prevents such use in the sale of liquor, the approval of such a registration is equivalent, in substance, to the issuance of a "permit." Indeed, a "brand label use permit," as such, was issuable  pursuant to former section 99-a (L. 1963, ch. 204, § 32)  at the time the brand label registration requirements were added to section 107-a and at the time the present case was before the Authority. The Authority's form of application, used by the petitioner in the present case, requested  to quote from the text of the document  "approval of the registration of the Brand Label specified [by the applicant] and issuance of a Brand Label Use Permit". This was enough, it appears to us, to constitute the Authority's adverse determination a "refusal to issue * * * a permit" within the meaning of section 121. The repeal of section 99-a in 1968 (L. 1968, ch. 597, § 1) should not be construed as expressing a legislative intention to remove brand label registration from the scope of judicial review. The sole purpose of the repeal was, evidently, to substitute for the permit fee theretofore payable to the Authority a tax of equivalent amount payable under the Tax Law.[8] For the reasons stated, a refusal to approve a brand label is subject to the same standards of review as apply to the other actions of the Authority listed in section 121.
In sum, then  since the proposed label for the petitioner's eight-year-old bourbon was not deceptive or incomplete and since the Authority concedes that six-year-old and eight-year-old bourbons are different products, there was no lawful basis, under section 107-a or section 101-b of the Alcoholic Beverage Control Law  or any other provision of statute  for the Authority's denial of the petitioner's application for a brand label registration and it should have been granted.
*41 The order appealed from should be reversed, with costs to the petitioner in this court and in the Appellate Division, and the matter remanded to Supreme Court, New York County, for further proceedings in accordance with the opinion herein.
BREITEL, J. (dissenting).
There is no disagreement in the court as to the reviewability of the Authority's action. There is disagreement whether the Authority's action was arbitrary and capricious.
The issue is not whether the six-year-old and the eight-year-old bourbons were different, but whether the difference, together with other manipulative circumstances, was used by the distiller to evade provisions of law regulating liquor prices. And whether there was such manipulative use of the difference between the two kinds of bourbon is a question exclusively for the Authority to determine if there is any rational basis to support its view.
The Appellate Division majority concluded that there was a rational basis for the Authority's determination and I agree.
While there is a difference between six and eight-year-old bourbon it is a difference of limited degree both as to quality and cost of production. A crucial circumstance which makes understandable and rational the action of the Authority is that the distiller's application for the new eight-year-old label was coupled with its request to withdraw its six-year-old bourbon from the New York market. A further crucial circumstance is that the distiller does not propose to withdraw its six-year-old bourbon in markets outside the State where it also sells eight-year-old bourbon. As stated by the Appellate Division: "By this mechanism the petitioner could maintain the price of a medium bourbon in New York (eight-year-old) and market a medium age bourbon throughout the country (six-year-old) at any price it saw fit." (29 A D 2d, p. 360.) In rejecting the distiller's application the Authority was not seeking to control what was sold but to enforce the price regulation features of the statute (Alcoholic Beverage Control Law, § 101-b, subd. 3, pars. [d]-[i]), at least as they affected medium age bourbon, in which class both the six-year-old and eight-year-old bourbon fall.
The net effect, therefore, of the distiller's action, as now approved by this court, is to remove from the New York market *42 the lower-priced six-year bourbon. In this way the legislative and statutory policy of the State to give New York consumers most favored price treatment afforded consumers in other States is denied in this instance. I also conclude that the Authority's power to approve or disapprove labels implies a power to reject a label if it serves the purpose of evading other provisions of law.
Accordingly, I dissent and vote to affirm the order of the Appellate Division.
Order reversed, with costs to petitioner in this court and in the Appellate Division, and matter remitted to Supreme Court, New York County, for further proceedings in accordance with the opinion herein.
NOTES
[1] The petitioner also sought a more general direction to the Authority to "accept registrations of brands of different ages or proofs or formulas with the same brand name."
[2] In an affidavit submitted to the court at Special Term, Donald S. Hostetter, Chairman of the State Liquor Authority, stated that "in no wise is the Authority saying, nor has it ever been urged, that 6 year old liquor is the same as 8 year old liquor."
[3] In full text, paragraph (a) of subdivision 4 of section 107-a reads as follows:

"No liquor, wine or beer shall be labeled, offered or advertised for sale unless in accordance with such regulations and unless the brand or trade name label affixed to or imprinted upon the container of such alcoholic beverage shall have been registered with and approved by the authority and the appropriate fee paid as provided for in this section."
[4] Thus, since 1942 it had been illegal to sell liquor to wholesalers or retailers at prices other than those specified in monthly schedules required to be filed by distillers and certain other distributors (Alcoholic Beverage Control Law, § 101-b, subds. 3, 4 [L. 1942, ch. 899, as amd. by L. 1948, ch. 551]).
[5] The commission reported that New York's price-fixing policies had no significant effect on temperance and appeared to benefit only the distillers. The existing law, it was found, resulted in the payment by the New York consumer of sharply higher prices for liquor than were charged elsewhere in the country.
[6] Paragraph (d) of subdivision 3 of section 101-b reads, in somewhat greater detail, as follows:

"There shall be filed in connection with and when filed shall be deemed part of the schedule filed for a brand of liquor pursuant to paragraph (a) of this subdivision an affirmation duly verified by the owner of such brand of liquor * * * that the bottle and case price of liquor to wholesalers set forth in such schedule is no higher than the lowest price at which such item of liquor will be sold by such brand owner * * * [anywhere in the United States] * * * at any time during the calendar month for which such a schedule shall be in effect". (Emphasis supplied.)
[7] The Authority has, the record indicates, dealt informally with several such cases, in which, for example, the distiller merely changed the proof by a fraction of one percent.
[8] Note appended to chapter 597 of the Laws of 1968, (Vol. 2, p. 2162), which repealed section 99-a and also amended subdivision 1 of section 424 of the Tax Law.