■ In the Matter of FRESH MEADOWS ASSOCIATES, Respondent, v NEW YORK CITY CONCILIATION AND APPEALS BOARD, Appellant.—Judgment of the Supreme Court, New York County, entered March 28, 1977, granting petitioner-landlord's petition and annulling determination of respondent Conciliation and Appeals Board which had directed landlord to restore base-date services and to correct specific conditions, modified, on the law, without costs or disbursements, to add that the matter be remanded to respondent for reconsideration in accordance with this memorandum decision and otherwise affirmed. Petitioner is directed, within 30 days after service upon it by respondent of a copy of the order to be entered hereon with notice of entry, to supply respondent with all records available to enable respondent to make an appropriate determination as to the base-date services involved. Special Term annulled respondent's determination herein on the ground that such determination was without "rational basis" because (1) respondent relied upon the failure of petitioner to supply it with sufficient data to determine whether there was a diminution of base-date services and (2) the direction to restore base-date services lacked objective criteria upon which compliance could be ascertained. It appears that petitioner gave much less than wholehearted and good faith co-operation to respondent in the production of the pertinent material which could form the basis for conclusions as to base-date services. On this type of application, the landlord is required to produce such records. Upon argument, petitioner's counsel stated that petitioner would now supply respondent with all records available to enable respondent to make an appropriate determination as to the base-date services involved. In view of the foregoing, the matter is remanded to respondent for reconsideration as herein directed. Concur—Birns, Silverman and Fein, JJ.; Murphy, P. J., concurs in part and dissents in part in a memorandum as follows: Upon the complaints of various tenants residing in the Fresh Meadows development, respondent Conciliation and Appeals Board rendered a determination that reads, in significant part, as follows:

"Section 62A of the Code requires that an owner maintain services as defined in Sections 2 (m) (1) and 2 (m) (2) (i) as all building-wide services provided or required to be provided on May 31, 1968 and all additional services provided or required to be provided thereafter. In this case, the owner's allegation of continued maintenance of base date services is unsubstantiated by objective criteria. First, the owner has not submitted complete documentation of the May 31, 1968 level of building-wide services by cost and man hours, citing difficulties arising from the change in ownership since 1972 despite the fact that the prior owner is the current holder of the 1st mortgage. Secondly, physical conditions at the premises, as shown by this Board's investigator's comprehensive inspection, are not uniform and in many buildings are below satisfactory levels of proper maintenance. At the same time, the Board notes that many of the items reported by the inspector fall into the category of vandalism—missing light bulbs, missing parts to public area windows (which are interchangeable with the windows in the apartments), windows broken by B.B. guns, etc. Many children were observed on the grounds unsupervised by adults. Over the course of the past three years, this owner has repeatedly denied any reduction in services, insisting that it responds immediately to all repair needs, but the record does not substantiate this allegation. Because of repeated and complex-wide complaints, the Board was forced to monitor services at the buildings, a time consuming procedure inconsistent with the nature of Rent Stabilization. The results of such monitoring support the tenants' allegations of general lack of maintenance. They do not substantiate the owner's allegations that services are properly maintained or that the buildings are adequately staffed. The time to process this proceeding and the staff resources needed for this one matter would not have been necessary if the owner had agreed over one year ago at the settlement conference (called at the request of the owner's own attorney) to initiate a schedule of repairs in co-operation with the tenants' committee under the supervision of this Board. The owner is herewith directed to restore services complex-wide to the level provided on May 31, 1968 and to immediately correct the specific conditions noted on the attached chart. In light of the history and current conditions at the premises, including the paucity of manpower currently and the inconclusive nature of the proof made available to this Board comparing current and base date manpower levels, the Board further directs the owner to reinstitute sufficient manpower either by direct employment or via contract services for repairs, maintenance and lawn maintenance". It is a well-settled principle that this court may review an administrative determination for errors of law alone *(Matter of Tompkins v Board of Regents of Univ. of State of N.Y.,* 299 NY 469, 474). Thus, this court has the power and duty to make certain that an administrative agency has not acted in excess of the grant of authority given it by statute or in disregard of the standard prescribed by the Legislature. *(Matter of Guardian Life Ins. Co. of Amer. v Bohlinger,* 308 NY 174, 183.) The Stabilization Code has been adopted pursuant to permission granted by legislation and it has been approved by the Housing and Development Administration. (Administrative Code of City of New York, § YY51-6.0.) The code is thus binding upon the respondent. The narrow question presented in this proceeding is whether the respondent rendered its determination in compliance with the code provision requiring services to be maintained on a level with those provided on May 31, 1968 (Code of Rent Stabilization Association, § 2[m]). The respondent made its determination in this proceeding in total disregard of the code criterion because it never ascertained the level of services provided on the base date

of May 31, 1968. Hence, it was impossible for respondent to evaluate whether there had been a diminution in such base services in the interim period. Of course, the petitioner owner could not comply with respondent's determination to restore base level services since, as was noted, the level of those services was never established. The respondent's determination was incorrectly founded upon two criteria not set forth in the code. First of all, respondent alluded to the fact that the petitioner did not submit complete documentation. It is unclear from this record whether the petitioner has been unco-operative in supplying information or whether the respondent has been less than diligent in pursuing all available data. In particular, there is no indication that the respondent sought relevant data that might be in the files of the prior owner, New York Life Insurance Company. In any event, if a member of the association fails to be co-operative, the respondent should take appropriate disciplinary action that includes both suspension and expulsion (Code of Rent Stabilization Association, §§ 7, 8, 34). Failure to co-operate, even if proven by respondent, may be damaging to a member's stance or credibility in a particular situation. However, failure to co-operate, in and of itself, does not affirmatively establish the base level of services for a particular building nor does it assist the respondent in formulating an order directing that maintenance be upgraded to the base level. Secondly, the respondent concluded, on the basis of its inspections, that there was a general lack of maintenance for the premises. The code does not authorize the respondent to make determinations based upon a general lack of maintenance or any other arbitrary standards that might be formulated by individual inspectors. As the base date becomes more removed, in time, it will become increasingly more difficult to prove the base level of services in any rent-stabilized building, even with the full co-operation of all concerned. The Stabilization Association should take cognizance of that fact and set up, with the approval of HDA, alternative criteria for determining whether a stabilized building is in disrepair. The court at Special Term correctly found that there was no rational basis for respondent's determination since it acted in total disregard of the code. This matter should be remanded for further proceedings consistent with this decision.