*445 OPINION OF THE COURT
Jones, J.
The role of the State Board of Equalization and Assessment in the assessment of State forest lands is limited to determination that the assessment made by the local assessors is in conformity with the applicable equalization rate. Authority for determination of valuation is vested in the local assessors.
Petitioner, Town of Shandaken (Town), is located wholly. within a forest preserve, and the State of New York owns 45,000 acres out of approximately 75,000 acres of land within the township. On June 1, 1981 the assessors of the Town filed their tentative tax roll for the 1981 year[1] and copies of the tentative assessments applicable to taxable State forest lands situated in the Town were sent to the State Board of Equalization and Assessment. The Town valued these State lands at $19,874,655. The State Board had previously made its own determination of the assessments for these lands, valuing the property at $15,899,720.[2] On August 20,1981, the State Board adopted a resolution approving a $16,516,600 assessment of the State forest lands in the Town for purposes of the 1981 assessment roll.
The Town commenced this article 78 proceeding to challenge the assessments approved by the State Board and to require approval by the State Board of the assessments made by the Town’s assessors. Supreme Court converted the proceeding to a declaratory judgment action, declared that the procedures followed by the State Board were in compliance with law and dismissed the Town’s complaint. The Appellate Division modified by vacating the declaration made by Supreme Court and substituting a declaration that the State Board’s procedures violated section 542 of the Real Property Tax Law and that the Town’s assessment was conclusive with respect to the value of the State lands, and, as so modified, affirmed.
*446 The State Board has appealed as of right. There should be an affirmance.
The applicable statute is section 542 of the Real Property Tax Law, which provided in pertinent part:
“§ 542. Assessment of state lands; approval thereof
“1. State lands subject to taxation shall be valued as if privately owned and assessed at the same percentage of full valuation as other taxable real property in the assessing unit.
* * *
“3. Not later than ten days after the tentative completion of the assessment roll in any assessing unit in which state lands are subject to taxation, the assessors shall notify the state board of the amount of any assessment of such state lands. Thereafter and not later than five days prior to the last day set by law for the final completion of the assessment roll each such assessment shall be approved by the state board in such an amount as will place it at the same percentage of full valuation as other taxable real property in the assessing unit. No such assessment shall be valid for any purpose without the approval of the state board”. Analysis of the unambiguous provisions of this statute leads us to our conclusion. Subdivision 1 provides that State lands subject to taxation “shall be valued as if privately owned and assessed at the same percentage of full valuation as other taxable real property in the assessing unit.” Subdivision 2 prescribes a scheduled procedural sequence by which such valuation and assessment shall be made. It first contemplates tentative completion of the assessment roll in the normal manner, i.e., valuation and assessment by the local assessors. The statute then prescribes that not later than 10 days after the tentative completion of the roll, the assessors shall notify the State Board of the amount of their assessment of State lands. Next the statute mandates that not later than five days prior to the last day set by law for the final completion of the assessment roll, each such assessment shall be approved by the State Board and that no such assessment shall be valid without such approval. The statute then prescribes with express particularity the legislatively determined standard which must be met for such approval, *447 namely, that each such assessment shall be “in such an amount as will place it at the same percentage of full valuation as other taxable real property in the assessing unit.” This is conspicuously a relational standard. Nothing in the statutory prescriptions grants initial or final valuation authority to the State Board; its authority is only to assure that the final assessment conforms to the applicable equalization rate.
That, as the State Board asserts, past practice has varied from the pattern of the statute does not warrant our disregard, when we are called on to consider the issue, of the explicit language of the statute (cf. Matter of Heller-stein v Assessor of Town of Islip, 37 NY2d 1). Appellant further invites our attention to various legislative documents from which it may be inferred that in the past there has been legislative acquiescence and perhaps approval of departure in practice from the statutory mandate. Whatever may be the vitality of such views in other contexts, their expression in collateral documents does not accomplish legislative enactment. If it is the intention of our Legislature to invest the State Board of Equalization and Assessment with the authority to determine valuation as well as to assure conformity with the equalization rate, the means is readily available to amend the statute so to provide.[3] Until there has been such revision, we are called on to interpret and apply the statute as presently enacted.
Past practice with respect to assessment for real property taxation in general, however, does explain the rationale for the design of section 542. Until our decision in Hellerstein (supra), it had been the nearly uniform practice of local taxing districts to assess real property at less than 100% of real value. Accordingly, ultimate fairness in assessment required scrutiny of the two steps in the assessment process — the propriety of the initial valuation of the property and then the correctness of the assessment percentage applied. Responsibility for the former is vested in the local assessors and procedures for the judicial review of their determinations are prescribed in article 7 of the Real *448 Property Tax Law. With reference to State lands subject to taxation, authority and responsibility for determination that the assessment percentage conforms to the equalization rate in the particular taxing district is committed to the State Board whose responsibility it is to determine equalization rates throughout the State (Real Property Tax Law, § 202, subd 1, par [b]). When the Legislature desires to give the State Board original authority to determine valuation for assessment purposes it makes clear its intention to do so (Real Property Tax Law, § 600, subds 1, 3; see City of Mount Vernon v State Bd. of Equalization & Assessment, 44 NY2d 960, 963).
For the reasons stated, the order of the Appellate Division should be affirmed, with costs.
Chief Judge Cooke and Judges Jasen, Wachtler, Meyer, Simons and Kaye concur.
Order affirmed, with costs.

. In 1977, following our decision in Matter of Hellerstein v Assessor of Town of Islip (37 NY2d 1) the Town was ordered by Supreme Court to assess all real property within its borders at 100% of actual value.

. The State Board has abandoned this practice of sending its suggested assessment to the Town prior to the fixing of a tentative assessment by the Town, and the Board no longer seeks to justify this practice in the present litigation.

. For unsuccessful efforts on the part of the State Board to obtain such statutory revision, see, e.g., the Board’s bill introduced in the 1984 session, S7761/A9151, with the Board’s accompanying memorandum in support of that bill (Proposal No. 83-15-R) and the Assembly 1984 Committee Bill Memorandum with respect thereto May 10, 1984.