In the Matter of CONSOLIDATED RAIL CORPORATION, Appellant, v STATE BOARD OF EQUALIZATION AND ASSESSMENT et al., Respondents. (And Five Other Related Proceedings.)

Third Department, December 18, 1986

### APPEARANCES OF COUNSEL

*Rogers Hoge & Hills (James N. Blair* of counsel), and *Johnston McShane & Kilgannon (Mary Beth Kilgannon* of counsel), for appellant.

*Robert Abrams, Attorney-General (John Q. Driscoll* and *William J. Kogan* of counsel), for State Board of Equalization and Assessment, respondent.

### OPINION OF THE COURT

LEVINE, J.

Petitioner operates an interstate railroad and, as such, is eligible for relief from full assessment of local real property taxes pursuant to the provisions of Real Property Tax Law, article 4, title 2-B, commonly known as the Purcell Act. The purpose of the legislation is to grant financially distressed interstate railroads in the State partial exemption from such property taxes (Real Property Tax Law § 489-aa). The exemption is from taxation on that portion of assessed valuation of nonsubsidized railroad real property which exceeds a statutorily defined "railroad ceiling" (Real Property Tax Law § 489-dd [4]). The applicable railroad ceiling is to be fixed by respondent State Board of Equalization and Assessment (SBEA) and computed as follows (Real Property Tax Law § 489-ee). The railroad local reproduction costs of transportation property (determined under Real Property Tax Law § 489-ii) are first multiplied by an "economic factor" (determined under Real Property Tax Law § 489-hh) and the product is then multiplied by the equalization rate of the local taxing jurisdiction (Real Property Tax Law § 489-jj). The economic factor is determined under the statute by the ratio of the railroad's preceding three-year average of operating expenses, to the same average of operating revenues (Real Property Tax Law § 489-gg). Expenses are those "incurred in furnishing transportation service and in operations incident thereto" (Real Property Tax Law § 489-ff [2] [a]); revenues are those received from "transportation service and from operations incident thereto and from rents derived from property * * * used for transpor-

tation purposes" (Real Property Tax Law § 489-ff [1] [a]). If the ratio of expenses to revenues is 1.0 or more, indicating operational losses, the economic factor is 20% (Real Property Tax Law § 489-hh). The economic factor increases from 20% to 100% under a statutory formula until the ratio reaches .75 (i.e., when the financial results of the railroad's operations advance from a break-even point to a profit of 25%). When the economic factor reaches 100%, the railroad ceiling exemption is effectively eliminated.

The statute requires SBEA to determine a tentative railroad ceiling for each municipality containing railroad real property and to give notice thereof to the local taxing jurisdiction and to the railroad with a date for any complaining party to be heard (Real Property Tax Law § 489-kk). Following the meeting of SBEA to hear any such complaint, SBEA makes a final determination of the railroad ceiling and files a certificate thereof with the assessor of the local taxing unit (Real Property Tax Law § 489-*ll*). The local real property tax assessment may not exceed the railroad ceiling (Real Property Tax Law § 489-mm).

The instant proceedings involve challenges to SBEA's determinations of the economic factor in computing petitioner's railroad ceilings for the July 1, 1984 through June 30, 1985 taxable year. Until 1981, petitioner operated at a loss and, hence, the economic factor applied was the statutory minimum of 20%. Thereafter, however, petitioner concededly had profitable operations. SBEA applied its determination of petitioner's average expenses and revenues during 1981 through 1983 to arrive at an economic factor of 23.3% in computing the tentative railroad ceiling for the assessment of petitioner's properties in New York City. Petitioner duly filed with SBEA a complaint essentially addressed to SBEA's inclusion of certain revenues and exclusion of certain expenses in calculating the applicable economic factor. The complaint was heard by a hearing officer designated by SBEA in June 1984. The final railroad ceiling fixed by SBEA for petitioner's New York City properties remained unchanged. Subsequently, SBEA rejected similar complaints as to some 513 tentative railroad ceilings for all of the taxing entities in which petitioner held real property, and final railroad ceilings were filed based upon an economic factor of either 23.3% or 23.0%. Petitioner then initiated these CPLR article 78 proceedings to challenge the determinations.

Special Term, relying upon *Matter of Guardian Life Ins. Co.*

*v Bohlinger* (308 NY 174), dismissed the petitions on the ground that the absence in the Purcell Act or elsewhere in the Real Property Tax Law of any express provision for judicial review of railroad ceiling determinations and the inclusion in the Real Property Tax Law of an article exclusively addressed to judicial review (art 7) are indicative of a legislative intent to foreclose judicial review of SBEA railroad ceiling determinations via CPLR article 78. Therefore, the court concluded, the only judicial inquiry left open as to railroad ceiling determinations is the residual "threshold" examination identified in *Guardian Life* of whether that administrative body acted in excess of its statutory grant of authority or in disregard of the standard prescribed by the Legislature *(Matter of Guardian Life Ins. Co. v Bohlinger, supra,* p 183). Since the determinations were within SBEA's grant of authority and the record did not establish that SBEA disregarded the statutory standards of the Purcell Act *(see, Matter of Barry v O'Connell,* 303 NY 46, 52), Special Term held that these proceedings should be dismissed.

Initially, we note that subsequent to Special Term's dismissal of petitioner's applications, the Purcell Act was amended to provide for review of SBEA determinations of railroad ceilings through a CPLR article 78 proceeding (Real Property Tax Law § 489-*ll* [3], as added by L 1986, ch 841, § 1). This provision was to take effect immediately (L 1986, ch 841, § 3 [eff Aug. 2, 1986]). On review, we must apply the law as it now exists, not as it existed at the time of Special Term's original determinations *(see, Matter of Asman v Ambach,* 64 NY2d 989, 990). Accordingly, reinstatement of the petitions and remittal for a determination of their merits is required.

Even had the Purcell Act not been so amended, we would disagree with Special Term's conclusion. The mere omission of a specific provision in the Purcell Act for judicial review of railroad ceiling determinations is insufficient to show that no such review was intended. As held in *Matter of Dairylea Coop. v Walkley* (38 NY2d 6, 10), "[a] fundamental tenet of our system of remedies is that when a government agency seeks to act in a manner adversely affecting a party, judicial review of that action may be had"; challenge under CPLR article 78 is foreclosed "[o]nly where there is a clear legislative intent negating review" *(supra,* at p 11). The clear legislative intent against judicial review found in *Matter of Guardian Life Ins. Co. v Bohlinger (supra)* is absent here. In *Guardian Life,* the omission of a specific provision in the Insurance Law for

judicial review of the particular determination of the Superintendent of Insurance challenged therein was coupled with (1) the express grant in the statute of judicial review of various other actions of the Superintendent; (2) a general provision on judicial review (Insurance Law former § 34) which stated in substance that where the statute specifically provided for review of an act of the Superintendent of Insurance, such review could be had through a CPLR article 78 proceeding; and (3) legislative history indicating that Insurance Law former § 34 was intended to be restrictive of judicial review. Contrastingly here, there is no provision in the Real Property Tax Law, akin to Insurance Law former § 34, governing judicial review of administrative real property tax determinations generally, nor is there any legislative history at all suggestive that, in failing expressly to provide for judicial review of various administrative determinations called for throughout the Real Property Tax Law, the legislative intent was to leave aggrieved parties remediless except for the limited challenge left open in *Guardian Life.* In our view, Special Term improperly found Real Property Tax Law article 7 as the analog of Insurance Law former § 34 relied upon in *Guardian Life.* Real Property Tax Law article 7 has been definitively interpreted as affording a judicial remedy only in the limited area of particular real property tax assessments and not as precluding a challenge under CPLR article 78 by persons aggrieved by other types of administrative actions under the Real Property Tax Law *(Matter of Dudley v Kerwick,* 52 NY2d 542, 549-551).

Moreover, a body of recent case law is clearly inconsistent with Special Term's inference that the absence of a statutory provision for court review of the determinations challenged and the judicial remedies created by Real Property Tax Law article 7 demonstrate a legislative intent to deny CPLR article 78 review here. In *Matter of Town of Arietta v State Bd. of Equalization & Assessment* (56 NY2d 356, 361), the Court of Appeals held that SBEA's determination of transitional assessments of State-owned forest preserve land under Real Property Tax Law § 545 was subject to challenge through a CPLR article 78 proceeding. In *Matter of Town of Shandaken v State Bd. of Equalization & Assessment* (97 AD2d 179, 181, *affd* 63 NY2d 442), this court similarly held that original assessments of State forest lands by SBEA under Real Property Tax Law § 542 were reviewable in a CPLR article 78 proceeding. In neither case did the Real Property Tax Law

provide specifically for judicial review of the action of SBEA complained of. Nevertheless, the challenges based upon allegations that SBEA had misinterpreted the governing statute and had acted arbitrarily and capriciously were held to fall within the traditional ambit of CPLR article 78 *(see, Matter of Town of Arietta v State Bd. of Equalization & Assessment, supra,* p 362; *Matter of Town of Shandaken v State Bd. of Equalization & Assessment, supra,* p 181). Petitioner here raises similar objections normally cognizable in a CPLR article 78 proceeding in alleging that SBEA misapplied the statute in including non-transportation-related revenues and excluding transportation-related expenses in the calculation of the economic factor, and that SBEA acted inconsistently in including revenue and excluding expenses from the same operational activities of petitioner. Furthermore, CPLR article 78 proceedings have repeatedly been entertained where, as here, the issue has involved one of the statutory exemptions under Real Property Tax Law article 4 *(see, Matter of Dudley v Kerwick, supra; Matter of Holy Spirit Assn. for Unification of World Christianity v Tax Commn.,* 62 AD2d 188; *Matter of Deull v Housing & Dev. Admin.,* 40 AD2d 803; *Matter of Grace Inst. v Clark,* 35 AD2d 368).

For all the foregoing reasons, the judgments of dismissal should be reversed, the petitions reinstated and the matters remitted to Supreme Court for further proceedings not inconsistent herewith.

MAHONEY, P. J., KANE, CASEY and WEISS, JJ., concur.

Judgments reversed, on the law, with costs, petitions reinstated and matter remitted to Supreme Court for further proceedings not inconsistent herewith.