In the Matter of DELAWARE & HUDSON RAILWAY COMPANY, Appellant, v BRUCE J. McDONALD, as Assessor of the City of Albany, et al., Respondents. (And 77 Other Related Proceedings.)

Third Department, March 5, 1987

30

**APPEARANCES OF COUNSEL**

*Lee, LeForestier, Malone & Hanft (Jill Nagy* of counsel), for appellant.

*Albert A. Baldo* for Laurence Shaffer, respondent.

*Nancy Kolvik* for Burnette B. Bundy, respondent.

*Vincent J. McArdle, Jr.,* for Bruce J. McDonald, respondent.

*John Silverberg* for Mary Charlton, respondent.

*Long & Boyajian (Donald W. Boyajian* of counsel), for Town of Waterford, respondent.

*Bloomberg & Santola (Daniel R. Santola* of counsel), for Town of Bethelehem, respondent.

*Susan Marie Tatro (Peter Gaynor Crummey* of counsel), for Town of Colonie, respondent.

*Tabner, Scher & Laudato (Paul J. Laudato* of counsel), for Town of Guilderland, respondent.

*Fitzpatrick, Trombley, Owens & Lahtinen, P. C. (Edward J. Trombley* of counsel), for Town of Chesterfield and others, respondents.

OPINION OF THE COURT

LEVINE, J.

These appeals concern some 78 proceedings brought pursuant to Real Property Tax Law article 7 by petitioner, an interstate railroad, to challenge real property tax assessments of its railroad property for the 1985 tax year by various local assessors throughout the State. Two of such proceedings were commenced in Otsego County against the assessors of the Town of Otego and the City of Oneonta. Another proceeding was brought in Albany County against the assessor of the City of Albany. The petition in each proceeding contained two alternative claims for relief. The first alleged that the assessments were erroneous and illegal by reason of overvaluation and inequality. The second claim was based upon an alleged entitlement to a statutory exemption from taxation of subsidized railroad property under Real Property Tax Law § 489-dd (1). Before answering the petitions, respondents in the two Otsego County proceedings moved to dismiss. Supreme Court, Otsego County, treated the motions as seeking summary judgment and granted dismissal of both petitions in their entirety on the grounds that, as to petitioner's claim of overvaluation and inequality, the court lacked subject matter jurisdiction, and that, as to the claim of a statutory exemption, petitioner was not entitled to such an exemption for the 1985 taxable year as a matter of law. Thereafter, petitioner in its Albany County proceeding moved, *inter alia,* for consolidation of that proceeding with some 75 pending similar proceedings against other local taxing jurisdictions and for summary judgment on its statutory exemption claim. Various respondents in those proceedings cross-moved to dismiss the petitions. Supreme Court, Albany County, ordered limited consolidation and then granted summary judgment dismissing the petitions. The court held that, under the doctrines of collateral estoppel and law of the case, the dismissal of the petitions in the two Otsego County proceedings precluded petitioner from obtaining relief. These appeals ensued.

■ In our view, Supreme Court, Otsego County, correctly ruled that, as a matter of law, petitioner's property was not subsidized for the taxable year at issue and, thus, was not entitled to the statutory exemption under Real Property Tax Law § 489-dd (1). That section is part of a legislative enactment, commonly known as the Purcell Act (Real Property Tax Law, art 4, tit 2-B, § 489-aa *et seq.),* the purpose of which was

to grant financially distressed interstate railroads relief by way of exemptions in whole or in part from local real property taxation *(see, Matter of Consolidated Rail Corp. v State Bd. of Equalization & Assessment,* 121 AD2d 107). Any exemption is to be granted on an annual basis and application therefor "shall be filed with the appropriate assessing authority on or before the appropriate taxable status date" (Real Property Tax Law § 489-dd [1]). Real Property Tax Law § 489-bb (4) defines subsidized railroad property as property "for which a rail service continuation subsidy is paid by the United States or the state of New York".

Petitioner points to two agreements as establishing the subsidization entitling it to the exemption, each of which was entered into with the State Department of Transportation and dated December 28, 1983. The first of these agreements is conceded by respondents to have constituted a rail service continuation subsidy. The payments provided thereunder are denominated as such. However, the term of the agreement was fixed at six months and, hence, the subsidy thereunder expired on or about May 28, 1984. Real Property Tax Law § 489-cc (3) provides that railroad real property is to be assessed "according to its condition and ownership as of the thirty-first day of December of the year preceding the year in which the assessment roll on which such assessment will be entered is filed in the office of the city or town clerk". In this instance, the operative date for taxable status as exempt railroad property was December 31, 1984. Since the subsidy provided under this agreement had expired the preceding May, the agreement is ineffective to establish the exemption. We are unpersuaded by petitioner's contention that the appropriate taxable status date is that provided under Real Property Tax Law § 302 (1), which mandates May 1 as the taxable status date for assessments of real property. Real Property Tax Law § 302 (1) is designed to govern the date of taxable status for real property assessments in general. Real Property Tax Law § 489-cc (3), however, was inserted to determine such taxable status date for the specific purposes of the statutory framework of exemptions of interstate railroad property under the Purcell Act. Under familiar canons of statutory construction, the more specific provision, addressed to the particular subject matter under consideration, will prevail over a general provision in the same statute *(see, Delaware County Elec. Coop. v Power Auth.,* 96 AD2d 154, 163-164, *affd* 62 NY2d 877).

The second agreement relied upon by petitioner for establishing a subsidy entitling it to an exemption was for a term of 30 years. Therefore, if it constituted a rail service continuation subsidy, it would afford a basis for the exemption. The agreement explicitly describes the payments to petitioner from the State thereunder as a 100% "reimbursement" for certain specified capital improvement projects. Neither the plain language of Real Property Tax Law § 489-bb nor its legislative history* suggests that a rail service continuation subsidy would include the full *reimbursement* of the costs of capital improvements, even if such improvements would incidentally promote the continuation of rail service. Since real property tax exemptions are to be strictly construed and any doubt or ambiguity in the application thereof must be resolved against the exemption *(see, Matter of City of Lackawanna v State Bd. of Equalization & Assessment,* 16 NY2d 222, 230), Supreme Court, Otsego County, properly upheld the denial of the exemption with regard to the second agreement.

▮ We reach a contrary conclusion as to the ruling of Supreme Court, Otsego County, that it lacked subject matter jurisdiction to determine petitioner's claims of overvaluation and inequality in the assessments of its properties. The basis upon which the court reached that conclusion was that the local assessments of petitioner's properties were based upon the respective "railroad ceilings" for such properties in each locality as determined by the State Board of Equalization and Assessment (SBEA) under the Purcell Act. Hence, the court reasoned, petitioner's exclusive remedy was a direct challenge to the SBEA's determinations. We disagree. The Purcell Act provides for a partial exemption for nonsubsidized railroad property from local real property taxation to the extent that the assessment exceeds the railroad ceiling set by SBEA (Real

---

* The phrase in question was borrowed from Federal law. In the original enactment of the Purcell Act, the exemption extended to property for which a rail service continuation subsidy was paid or payable pursuant to Federal Regional Railroad Reorganization Act of 1973, titles III and IV, as amended (Real Property Tax Law former § 489-bb [4]). Under the Federal act, the purpose of the subsidy is described in substance as being to cover the difference between revenues and operating expenses, plus a reasonable return on investment in the subsidized property *(see,* 45 USC § 744 [c] [2] [A]).

Property Tax Law § 489-dd [4]). The statutory procedures for SBEA's determination of the railroad ceiling are more fully described in our decision in *Matter of Consolidated Rail Corp. v State Bd. of Equalization & Assessment (supra)* and need not be repeated here. It is sufficient to note that the Purcell Act does not explicitly require SBEA to set the assessment of railroad real property nor does it oust the assessors of local taxing jurisdictions from that responsibility *(cf.* Real Property Tax Law § 600 [with regard to the assessment of special franchises]). The railroad ceiling is not an assessment, but only a cap on that of the local taxing entity, beyond which nonsubsidized railroad real property is exempt from taxation. Indeed, in directing that if the local assessment "does not exceed the ceiling * * * the assessor shall make no adjustment in such assessed valuations" (Real Property Tax Law § 489-mm [1]), the Purcell Act specifically recognizes that a local assessor may arrive at a valuation of railroad real property less than the ceiling set by SBEA, in which case the local assessment shall control for taxation purposes. Real Property Tax Law article 7 has been described as the exclusive method of challenging an assessment of real property on the grounds of overvaluation and inequality *(see, Abrams v Long Is. Light. Co.,* 117 AD2d 764, *appeal dismissed* 68 NY2d 752). It is a remedial statute and is to be liberally construed in favor of affording judicial review *(see, Matter of Great E. Mall v Condon,* 36 NY2d 544, 548; *Matter of Lieberman v Johnson,* 60 AD2d 933, 934). Therefore, we should not read into the Purcell Act by implication any legislative intent to remove the traditional jurisdiction of Supreme Court to review real property tax assessments under Real Property Tax Law article 7. It follows that the petitions should not have been dismissed on the ground of lack of subject matter jurisdiction. In so ruling, we take no position on the merits of any of the other defenses to petitioner's claims of overvaluation or inequality raised by respondents' pleadings or papers on the motions, nor as to the preclusive effect, if any, on particular issues involved in petitioner's challenges of any findings and determinations by SBEA in fulfillment of its statutory responsibility to set the appropriate railroad ceiling, none of which is properly before us on the instant appeal.

MAHONEY, P. J., KANE, WEISS and HARVEY, JJ., concur.

Orders modified, on the law, without costs, by reversing so much thereof as dismissed petitioner's claims for review of the assessments of its real property upon the grounds of overvaluation and inequality; matters remitted to Supreme Court, Otsego County, and Supreme Court, Albany County, for further proceedings not inconsistent herewith; and, as so modified, affirmed.