OPINION OF THE COURT
Henry F. Zwack, J.
*176 This is a special proceeding brought pursuant to CPLR 7503 (c) seeking to stay arbitration of a supplementary uninsured./ underinsured motorist (SUM) claim. Respondent was injured on June 1, 2008 when the driver of the car in which she was riding lost control and the vehicle flipped over. The driver was later charged with driving while intoxicated. His insurance carrier settled with respondent for the $25,000 personal injury liability limit of his policy. Respondent then sought SUM coverage from petitioner, with whom respondent’s husband has a policy of automobile insurance which contains such coverage.
Petitioner disclaimed coverage, contending that respondent’s physical separation from her husband in early May 2008 ended her status as an insured under the terms of the SUM endorsement of the policy. Respondent nonetheless filed a demand for arbitration. This proceeding followed.
A threshold issue is respondent’s claim that petitioner’s disclaimer of coverage was untimely. “A disclaimer is unnecessary when a claim does not fall within the coverage terms of an insurance policy. Conversely, a timely disclaimer pursuant to Insurance Law § 3420 (d) is required when a claim falls within the coverage terms but is denied based on a policy exclusion” (Markevics v Liberty Mut. Ins. Co., 97 NY2d 646, 648-649 [2001] [citation omitted]).
Here, petitioner’s disclaimer is based on the premise that, under the terms of the SUM endorsement, coverage only extends to the spouse of a named insured when that spouse is a resident of the household of that insured. Accordingly, as petitioner’s position is that respondent is not an individual covered by the SUM endorsement of the policy, the question of timeliness of the disclaimer is inapposite.
The central question in this case is whether respondent, physically separated from her husband for less than a month at the time of the accident, is covered under his policy with petitioner. On the very first page of that policy, under the heading “DEFINITIONS,” is the following language:
“A. Throughout this policy, ‘you’ and ‘your’ refer to:
“1. The ‘named insured’ shown in the Declarations; and
“2. The spouse if a resident of the same household.
“If the spouse ceases to be a resident of the same household during the policy period or prior to the inception of this policy, the spouse will be considered *177 ‘you’ and ‘your’ under this policy but only until the earlier of:
“1. The end of 90 days following the spouse’s change of residency” (emphasis supplied).
Under this language, it would seem clear that respondent, as the spouse of the named insured and not having changed her residence more than 90 days before the accident, would be covered to the same extent as her husband, the “named insured.” The difficulty arises here because the SUM endorsement, whose precise language is mandated by 11 NYCRR 60-2.3 (f), contains the following:
“I. Definitions. For purposes of this SUM endorsement, the following terms have the following meanings:
“(a) Insured. The unqualified term ‘insured’ means:
“(1) you, as the named insured and, while residents of the same household, your spouse and the relatives of either you or your spouse . . . .”
Under the definition of “insured” in the SUM endorsement, then, respondent would not be covered, inasmuch as she was not a resident of her husband’s household at the time of the accident. Since the two definitional sections of the policy contradict one another, the question becomes which of the two definitions should control. The answer will require an analysis of the origin of the SUM language as well as a determination of the applicable standard of interpretation.
11 NYCRR 60-2.3 (c) mandates that every SUM endorsement shall be in the form prescribed in section 60-2.3 (f). The statutory basis for this requirement is Insurance Law § 3420 (f) (2) (A), which provides that SUM coverage must be made available “at the option of the insured.” While the minimum amount of insurance coverage to be made available under a SUM endorsement is controlled by the language of the regulation, nothing suggests that an insurance carrier does not remain free to provide terms that are “more favorable to the insured” (Insurance Law § 3420 [a]). There is thus no statutory or regulatory proscription against petitioner’s broadening the definition of an insured party beyond the minimum statutory and regulatory requirements.
When petitioner chose, as it did, to use the phrase “[throughout this policy,” it did not state any exclusions to the scope of this broad wording. Any reasonable person reading the definitional section covered by this phrase would therefore infer that any subsequent reference in the policy to “you” would include a *178 spouse not physically separated, from the named insured for more than 90 days. The language is clear and unequivocal, subject to no alternative interpretation.
The dilemma occurs because the prescribed regulatory language contains a definition that differs from that given on the first page of petitioner’s policy. Under one definition, respondent is covered. Under the other, she is not. This is a classic “ambiguity” in its purest etymological sense: it leads the reader in two directions at the same time.
Both parties to this litigation agree that the dilemma must be resolved. They disagree, not only on the ultimate resolution, but on its method. Petitioner urges that the standard to be applied is one of plain meaning and “impartial interpretation” (reply affirmation If 22), since the SUM language is mandated by statute (see Walton v Lumbermens Mut. Cas. Co., 88 NY2d 211, 214 [1996]). Respondent, on the other hand, insists that the general rule construing inconsistencies in insurance policy language against the drafter should be applied (see Wagman v American Fid. & Cas. Co., 304 NY 490 [1952]).
The prescribed language of the SUM endorsement, when read alone, is clear and unambiguous. What removes its clarity and creates the ambiguity is petitioner’s facially contradictory definition, ostensibly applicable “[throughout th[e] policy.” The mandatory SUM language existed first; petitioner wrote its policy and incorporated the preexisting SUM language. Accordingly, if the unambiguous SUM language loses its clarity because petitioner chose to draft language of its own that contradicts the definitions of the SUM endorsement, the Wagman standard should apply, as it is petitioner and not the Insurance Department that created the ambiguity.
The balance of the analysis is simple. Petitioner’s policy provides coverage to respondent under one definition of its terms, then excludes her from coverage under another definition. Resolution of the inconsistency against the drafter of the inconsistent language results in coverage for respondent.
The appropriateness of this result can be cross-checked by the application of the familiar canon of construction which holds that the specific shall take precedence over the general (cf. Matter of Delaware & Hudson Ry. Co. v McDonald, 126 AD2d 29, 32 [3d Dept 1987]). Petitioner’s expansive definition of “you” provides a specific formula for the determination of the termination of coverage for a nonresident spouse at the end of 90 days. The general language of the SUM endorsement merely states *179 that a spouse will be covered “while [a] resident[ ] of the same household,” yet is silent as to whether coverage terminates at the moment when a spouse decides to leave the household, after the spouse has established a different residence, or after the spouse has removed all possessions from the former household. The specific language of the main policy provides clear guidance and fixes a definite terminus for coverage; the general SUM endorsement language does not. Coupled with the unequivocal statement that the specific definition will apply “[throughout this policy,” there can be little doubt that respondent falls within the definition of covered individuals.
Petitioner contends that the clear statement that the policy’s definition would apply “throughout” is countered by the statement that appears immediately before the SUM endorsement: “THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.” This statement is so general as to be meaningless. It cannot be reasonably interpreted as superseding the definition that was said, by petitioner, to apply “[throughout th[e] policy.”
To say that the SUM endorsement “changes” the policy is at best surplusage and at worst misleading. If the SUM endorsement did not “change” the policy there would be no point in its inclusion. If the policy already provided exactly the same SUM coverage as the endorsement describes, reiterating the terms of that coverage in an endorsement that did not “change” the policy would be pointless. Therefore, to state expressly that the endorsement “changes the policy” means nothing. If, on the other hand, the true purpose of the statement is to provide petitioner with the ability to claim that its own choice of apparently clear wording that its definitions would apply “[throughout this policy” was in fact really intended to mean “only until we choose to use a different definition,” it is an intent that cannot be effectuated at respondent’s expense. As noted, supra, ambiguous language in a contract of insurance is to be construed against the insurer. If petitioner’s language was chosen to mean one thing while appearing to mean another, it cannot be enforced.
Finally, the importance of petitioner’s having chosen to incorporate respondent’s and her husband’s separation agreement into the record of this case cannot be overlooked. While that document may have certain obvious flaws, such as the complete absence of the statutorily mandated language required as a prerequisite to the enforceability of the parties’ *180 agreement to deviate from the strictures of the Child Support Standards Act, it does contain one unique element: an express agreement (art V [a]) that the husband would “continue to pay the motor vehicle liability insurance on the motor vehicle currently being utilized by [respondent]” for some time after their separation. The inclusion of this provision implies that respondent (and her husband) were of the opinion that, at least for some limited period of time, respondent would be covered by the very policy that petitioner contends did not include respondent within the ambit of its SUM coverage from the moment of her physical separation from her husband. The inclusion of this provision in the separation agreement, coupled with the husband’s obvious willingness to turn over to petitioner voluntarily a document that would ordinarily be considered confidential (cf Domestic Relations Law § 235), suggests the lack of a meeting of the minds between petitioner and the named insured at the time of the purchase of the policy. Surely, had the husband known that his wife’s SUM coverage was intended to end immediately upon her vacating the marital residence, he would not likely have freely disclosed a separation agreement whose terms could conceivably be read as requiring him to be his wife’s de facto SUM insurer. A reasonable inference to draw from all this is that petitioner’s statement, “This endorsement changes the policy,” fails to communicate any notion that a definition previously said to apply “throughout this policy” in fact does not.
Finally, petitioner’s reliance on Cohen v Chubb Indem. Ins. Co. (286 AD2d 264 [1st Dept 2001]) is misplaced. That case held that where a primary policy of insurance contains mutually exclusive definitions of “motor vehicle” and “motorcycle,” the claimant could not rely on the lack of such exclusive definitions in a SUM endorsement to “bootstrap” a claim for SUM coverage arising out of a motorcycle accident. In Cohen, however, the Appellate Division, after noting, “The use of the same term to mean more than one thing in the same insurance policy invites confusion” (286 AD2d at 265), went on to underscore two facts not present here: that “the SUM provision contained in the Chubb policy states, at the outset, that ‘statutory wording is used in lieu of simplified wording,’ ” and that “the conditions under which SUM coverage is provided clearly indicate that the general provisions of *181 the policy are inapplicable” (id. at 265-266). It is precisely the absence of any such clear language in the policy at issue here that compels dismissal of the petition.
Accordingly, it is ordered that the petition is dismissed; and it is further ordered that petitioner’s application for prearbitration discovery is granted as consented to by respondent.